

# IN THE
# TENTH COURT OF APPEALS

## No. 10-09-00221-CR

**JACOB RUFUS AMSPACHER,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the County Court at Law
### Coryell County, Texas
### Trial Court No. 08-58049

## OPINION

Jacob Rufus Amspacher appeals a conviction by a jury for Illumination of Aircraft by Intense Light. TEX. PEN. CODE ANN. § 42.14 (Vernon Supp. 2008). Amspacher contends that the evidence was factually insufficient for the jury to have found him guilty and that the trial court erred in allowing testimony regarding his conduct and statements when he was approached by law enforcement. Because we find that the evidence was factually sufficient and that the trial court did not abuse its discretion in the admission of evidence, we affirm the judgment of the trial court.

*Factual Sufficiency*

In a factual sufficiency review, we view the evidence in a neutral light and ask whether the evidence supporting the verdict is so weak or so against the great weight and preponderance of the evidence as to render the verdict manifestly unjust. *Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); *Grotti v. State*, 273 S.W.3d 273, 283 (Tex. Crim. App. 2008). Although a factual sufficiency review authorizes us, to a very limited degree, to act as a "thirteenth juror," we must nevertheless give the jury's verdict a great degree of deference. *Watson v. State*, 204 S.W.3d 404, 416-17 (Tex. Crim. App. 2006). The fact-finder alone determines what weight to place on contradictory testimonial evidence because that determination depends on the fact-finder's evaluation of credibility and demeanor. *See* TEX. CODE CRIM. PROC. ANN. art. 36.13 and 38.04 (stating that the jury is the exclusive judge of the facts and of the weight given to testimony); *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We afford almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility as the jury is in the best position to judge the credibility of a witness because it is present to hear the testimony, as opposed to an appellate court which relies on the cold record. *Lancon*, 253 S.W.3d at 705. *See also Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006).

A "high level of skepticism about the jury's verdict" is required before we may reverse due to factual insufficiency. *Watson*, 204 S.W.3d at 417. We may not find the evidence to be factually insufficient merely because there are "reasonably equal competing theories of causation." *Goodman v. State*, 66 S.W.3d 283, 287 (Tex. Crim. App.

2001). Further, a factual sufficiency reversal certainly may not occur when the evidence actually preponderates in favor of conviction. *Watson*, 204 S.W.3d at 417. Before reversing a conviction on the basis of factual insufficiency, we must detail all the relevant evidence and must explain in exactly what manner the evidence is factually insufficient. *Watson*, 204 S.W.3d at 414.

### *Illumination of Aircraft by Intense Light*

Section 42.14 of the Texas Penal Code became effective on September 1, 2007. No other Court has discussed or construed this statute since its inception. It states in relevant part as follows:

(a)     A person commits an offense if:

(1) the person intentionally directs a light from a laser pointer or other light source at an aircraft; and

(2) the light has an intensity sufficient to impair the operator's ability to control the aircraft.

….

(c) An offense under this section is a Class C misdemeanor unless the intensity of the light impairs the operator's ability to control the aircraft, in which event the offense is a Class A misdemeanor.

TEX. PEN. CODE ANN. §42.12 (Vernon Supp. 2008).

Amspacher complains that the evidence was factually insufficient for the jury to find that: (1) he was the person spotlighting the aircraft; (2) he intentionally pointed the light at the aircraft; (3) the light was intense enough to impair the operator's ability to control the aircraft; (4) the operator's ability to control the aircraft was impaired.

*The Facts*

At night on April 1, 2008, a pilot and his trainee were flying an Apache helicopter over the west side of Fort Hood, Texas, when they received a call that another aircraft was being spotlighted. The pilot flew toward Pidcoke, Texas, when he and his trainee noticed that they were being spotlighted as well. The pilot had an infrared sight device over his right eye and his left eye was unobstructed. The pilot and his trainee were able to fix their infrared sensors on the location of the spotlight and the person in the area. The pilot believed that he may have seen the person go behind his residence, but was not certain of this. The pilot and his trainee maintained that location until law enforcement arrived in Pidcoke, and then they directed the trooper to the location from where they had seen the spotlight originating.

The pilot stated that the light caused "flash blindness," which impaired his night vision. The incident with the spotlighting caused the pilot and his trainee to abandon their mission. While the pilot did not at any time lose control of the helicopter and was in no danger of crashing, he stated that the light did interfere with his ability to observe his surroundings and to fly safely. For example, the pilot stated he was unable to see wires and lights of towers as well as any other aircraft potentially in the area, which created an unsafe situation.

The trooper that first arrived at Amspacher's residence also observed that a spotlight was shone on an aircraft as he was responding to the call. The spotlight went off, and the trooper did not see it again. He could not tell if the spotlight originated from the east or west side of FM 116. Upon his arrival, the trooper found Amspacher

yelling at the helicopter with a camcorder pointed at it. The trooper did not search Amspacher and did not locate a spotlight; however, Amspacher was the only person at the scene. Amspacher refused to identify himself or produce identification.

A Coryell County deputy and a reserve deputy arrived and found Amspacher to be aggressive and irritated. He was swearing and talking about how he was not in Nazi Germany, referenced the Gestapo, and that he was not in Russia. The reserve deputy heard Amspacher stating that he was upset that the Army could fly over his property, shine lights, and make noise. There were two other deputies that arrived and none of them located a spotlight that night. Fort Hood then let them know that they would not be coming to arrest Amspacher, and so the deputies departed without arresting Amspacher at that time.

*Identity*

We cannot say that the evidence is factually insufficient to find Amspacher guilty of being the person who illuminated the aircraft. The pilot of the Apache stated that he and his trainee were able to stay focused on their target, who was the person shining the spotlight. The pilot was able to lead law enforcement to the source of the light, which was where Amspacher was located. There was no one else at the location with Amspacher. There was a break in-between when the spotlight was extinguished and the arrival of law enforcement. There was no spotlight located at the scene. When Amspacher was located by law enforcement, he was using a camcorder and was visibly and verbally angry. Amspacher made comments that he was upset about the military

flying over his residence. The jury, as the factfinder, was able to observe the credibility of the witnesses and determined that Amspacher did indeed illuminate the helicopter.

*Intent*

Amspacher contends that the evidence was also factually insufficient to find that he intentionally illuminated the aircraft. The relevant evidence of intent according to Amspacher was his comments regarding his hostility to the military flying over or near his residence, his general demeanor of being angry and swearing, his refusal to identify himself to law enforcement upon request, and that he was using a camcorder late at night in a location where it was dark presumably to videotape the Apache's flight. Amspacher contends that the jury could have inferred from the possession and use of the camcorder that he was reacting to the presence of the helicopter and gathering evidence for a later complaint to the Army. However, we may not find the evidence factually insufficient simply because there may be competing theories of causation. *Goodman*, 66 S.W.3d at 287. This contention does not give us a "high degree of skepticism" about the jury's verdict regarding Amspacher's intent to illuminate the aircraft. *See Watson*, 204 S.W.3d at 417.

*Intensity*

Amspacher contends that because no expert testimony was offered regarding the actual intensity of the light that the evidence is factually insufficient for the jury's finding that the intensity of the light was sufficient to impair the operator's ability to control the aircraft. We do not agree that expert testimony is required to determine that the light was intense enough to impair the operator's ability to control the aircraft. Lay

witnesses are allowed to give opinions that are: "(a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." TEX. R. EVID. 701.

Amspacher does not explain why he contends that expert testimony would be necessary. Further, the trooper who observed the spotlight from afar testified that the light was a concentrated, intense beam and was different from the light that was shining down from the helicopter. The pilot, who had accumulated over 2,700 hours of flight time in helicopters and airplanes and was a flight instructor for the military, also testified that the light caused "bleaching out" of the rhodopsin in the eyes which affects night vision and makes it difficult to see with the naked eye at night. We find this evidence is factually sufficient for the jury to have found that the light was intense enough to impair the operator's ability to control the aircraft.

*Impairment and Ability to Control*

Amspacher contends that the evidence was factually insufficient for the jury to determine that the pilot was actually impaired and also that any impairment affected his ability to control the helicopter. In order to decide this issue we must first determine what is meant by the language used in the statute. We must establish and apply the legislature's intent that is expressed by the language of the statute. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006).

To interpret the use of "impair" and "control" in section 42.14(a)(2), "we necessarily focus our attention on the literal text of the statute." *Williams v. State*, 270 S.W.3d 140, 146 (Tex. Crim. App. 2008) (*citing Boykin v. State*, 818 S.W.2d 782, 785 (Tex.

Crim. App. 1991)). Because "every word in a statute has been used for a purpose," "each word, phrase, clause, and sentence should be given effect if reasonably possible." *Williams,* 270 S.W.3d at 146 (*citing State v. Hardy*, 963 S.W.2d 516, 520 (Tex. Crim. App. 1997)). We "first attempt to interpret the statute based on the plain meaning of the words used." *Williams*, 270 S.W.3d at 146 (*citing Olivas v. State*, 203 S.W.3d 341, 345 (Tex. Crim. App. 2006)). When the statute does not define certain terms, we turn to the common, ordinary meaning of that word. *Id*. Webster's Dictionary defines "impair" as: "to damage or make worse by or as if by diminishing in some material respect." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 580 (10th Ed.). "Control" is defined as:

1.(a) : to check, test, or verify by evidence or experiments;
   (b) : to incorporate suitable controls in;
2.(a) : to exercise restraining or directing influence over : regulate;
   (b) : to have power over : rule; or
   (c) : to reduce the incidence or severity of especially to innocuous
         levels.

MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 252 (10th Ed.).

The pilot testified that the light did impair him. When the helicopter was illuminated, it became necessary to change what they were doing because it was such a large distraction. In his statement to law enforcement near the time of the incident, the pilot stated that although he did not feel the safety of his crew or his aircraft was in danger, the light was bright enough that it impaired and affected normal flight operations. The light came from the right side of the helicopter, which was the side on which the pilot's eye was obstructed. However, the pilot testified that the light interfered with his ability to spot other aircraft, wires, and towers because of its

interference with his night vision, which is necessary for him in obstacle detection. The light did not interfere with keeping the aircraft from crashing, because the pilot had been trained in how to deal with that issue. We find the evidence is factually sufficient for the jury to have determined that the pilot was impaired.

Section 42.14(a)(2) further requires that the operator's ability to control the aircraft be impaired. Amspacher argues that the fact that the pilot was not concerned about crashing the aircraft renders the evidence factually insufficient. We do not believe that the plain language of the statute requires such a narrow interpretation. The pilot's ability to visually ensure that his surroundings are safe is a component of what is necessary to control an aircraft. The pilot stated that the types of helicopters used by the military are difficult to see by any means other than direct vision at night. Being unable to see at night because of a bright light spotlighted on the aircraft certainly could impair a pilot's ability to control his aircraft. It is not necessary that the aircraft be in immediate danger of crashing for the pilot's ability to control the aircraft to be impaired.

Amspacher further contends that the pilot's testimony was not clear in stating that he was actually impaired, but only that the light could possibly have impaired his ability to control the aircraft. The pilot stated that he looked away from the light initially and that it became an annoyance more than anything. The light did cause the pilot and his trainee to change what they were doing and how they were doing it. The pilot reiterated several times that his training would ensure that he was not going to crash the aircraft due to the spotlight, because he had been trained while in the military

for sudden bright flashes of light which could occur while in combat during a deployment. The jury, as the fact-finder, was free to believe or disbelieve the testimony regarding whether the pilot's ability to control the aircraft was impaired. The evidence was factually sufficient to sustain the jury's finding of guilt. We overrule Amspacher's issue one.

*Improper Admission of Evidence*

In his second issue, Amspacher complains of the admission of testimony by two law enforcement officers regarding statements made by and the conduct and demeanor of Amspacher when they approached him, apprehended him, and later released him. Prior to the testimony of the first sheriff's deputy, the trial court conducted a hearing on the admissibility of the deputy's testimony. Amspacher objected to the testimony pursuant to Texas Rules of Evidence 401 and 403. The trial court determined that the testimony would be admissible for both deputies, although there was no testimony at that hearing by the second deputy.

When reviewing a trial court's ruling on the admission of evidence, we apply an abuse of discretion standard of review. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Id*.

Texas Rule of Evidence 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403.

Although the Texas Rules of Evidence are intentionally slanted toward the inclusion of all relevant evidence, Rule 403 gives the trial court considerable discretion to exclude evidence when it appears to that individual judge, in the context of that particular trial, to be insufficiently probative when measured against the countervailing factors specified in the rule. *Winegarner v. State*, 235 S.W.3d 787, 791 (Tex. Crim. App. 2007); *see Montgomery v. State*, 810 S.W.2d 372, 378-79 (Tex. Crim. App. 1991) (op. on orig. submission); 810 S.W.2d at 391-92 (op. on reh'g); *Johnson v. State*, 263 S.W.3d 405, 426-427 (Tex. App.—Waco 2008, pet. ref'd).

In a Rule 403 analysis, a trial court must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006); *see State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005); *Montgomery*, 810 S.W.2d at 389-90 (op. on reh'g). "The rule gives the trial court considerable latitude to assess the courtroom dynamics, to judge the tone and tenor of the witness' testimony and its impact upon the jury, and to conduct the necessary balancing." *Winegarner*, 235 S.W.3d at 791.

*Preservation of Error*

To preserve error, a party must object each time inadmissible evidence is offered unless he (1) obtains a running objection, or (2) makes an objection outside the presence of the jury to all the testimony he deems objectionable. *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003); *see* TEX. R. APP. P. 33.1. Any error in the admission of evidence, however, is cured when the same evidence comes in elsewhere without objection, either before or after the complained-of ruling. *Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004). A defendant who fails to preserve error regarding the evidence's admissibility forfeits his complaint on appeal. *Badall v. State*, 216 S.W.3d 865, 867 (Tex. App.—Beaumont 2007, pet. ref'd). However, when the court, out of the jury's presence, hears and overrules objections to evidence, the complaining party is not required to object again before the jury in order to preserve error. TEX. R. EVID. 103(a); *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991).

The State contends that Amspacher waived his right to complain about the testimony of the deputies because he did not object when the second deputy testified and because he did not object when the trooper testified. The trooper testified that Amspacher was yelling at the helicopter and when approached by the trooper, he refused to identify himself or provide identification because he was not in Nazi Germany. This testimony was not objected to at any time. Therefore, any complaints regarding this or similar testimony that was admitted through other witnesses is waived. *See Lane*, 151 S.W.3d at 193. However, the testimony regarding Amspacher's

anger and hostility, both in general and toward the military, his use of foul language, and references to Russia were not part of the testimony of the trooper.

Amspacher did object to the testimony of the two deputies at the hearing conducted outside of the presence of the jury based on Rule 403. He objected again during the testimony of the first deputy, but did not request a running objection, and did not object at all during the second deputy's testimony. However, we find that his objection in the hearing outside of the presence of the jury was sufficient to preserve error. *See Ethington*, 819 S.W.2d at 858.

The term "probative value" refers to the inherent probative force of an item of evidence -- that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation -- coupled with the proponent's need for that item of evidence. *Gigliobianco*, 210 S.W.3d at 241. In *Montgomery v. State*, 810 S.W.2d 372, 390 (Tex. Crim. App. 1990) (op. on reh'g), the Court of Criminal Appeals stated that "[w]hen the proponent [of an item of evidence] has other compelling or undisputed evidence to establish the proposition or fact that the [item of evidence] goes to prove, the [probative value of the item of evidence] will weigh far less than it otherwise might in the probative-versus-prejudicial balance."

The demeanor and language used by Amspacher makes it more likely that he intended to spotlight the aircraft in that he was angry with the military and was attempting to videotape the helicopter, as opposed to potentially an inadvertent act. The State's need for this evidence was fairly substantial in providing evidence of intent and motive.

The fact that Amspacher used foul language, was critical of the Army and law enforcement, and mentioned Russia in the midst of his tirade might tend to suggest decision on an improper basis, however, we believe any such tendency to be slight. We do not believe that the evidence tended to confuse or distract the jury from the main issues or that the jury was not equipped to evaluate the probative force of the evidence, and Amspacher has not demonstrated otherwise. Additionally, the presentation of the evidence was very slight in relation to the rest of the trial. When reviewing the evidence, we cannot say that the trial court's decision that the probative value outweighed any unfair prejudice was outside of the zone of reasonable disagreement. We overrule Amspacher's second issue.

*Conclusion*

We find that the evidence was factually sufficient to support the conviction. We find that the trial court did not abuse its discretion in the admission of evidence pursuant to Rule 403. We affirm the judgment of the trial court.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Reyna, and
     Justice Davis
Affirmed
Opinion delivered and filed December 30, 2009
Publish
[CR25]