Affirmed in part; Reversed and Acquitted in part; and
Opinion filed August 31, 2010.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-08-01054-CR

___________________

 

Kay J. Anderson A/K/A KERINE J. ANDERSON,
Appellant

 

V.

 

State of Texas, Appellee



 



 

On
Appeal from the 178th District Court

Harris County,
Texas



Trial Court Cause No. 1037632

 



 

 

O P I N I O N

Appellant, Kay J. Anderson a/k/a
Kerine J. Anderson, was convicted of misapplication of fiduciary property and
theft based on her handling of investment funds.  She was sentenced to 20 years
in prison on each conviction, the sentences to run concurrently.  In three
issues, appellant contends that (1) the evidence is legally and factually
insufficient to uphold her convictions and (2) prosecution for the offense of theft
was barred by the applicable statute of limitations.  We affirm appellant’s conviction
for misapplication of fiduciary property, reverse appellant’s conviction for
theft, and render judgment of acquittal on the theft conviction.  

I.  BACKGROUND

Texoil Corporation, created in 1979, developed oil
reserves and oil property.  The company created 20 general partnerships; under
these general partnerships, thousands of limited partnerships were created. 
The limited partnerships were capitalized by investors who each agreed to
execute promissory notes payable to Texoil Corp. in the amount of $250,000.  The
terms of the promissory notes required the limited partnership investors to
make annual contributions.  For their $250,000 investment in Texoil Corp., the
investors were entitled to tax deductions for the face value of the note.  

Under the tax scheme, the limited partnership
investors did not pay the full $250,000.  In the first year, investors made minimal
cash contributions but took a tax deduction on the full value of the note.  In
the following years, the investors did not make cash contributions but executed
additional promissory notes to pay the required annual contribution.  The
investors continued to take tax deductions on the entire $250,000.  Ultimately,
the Internal Revenue Service determined that the limited partnerships were
illegal tax shelters and disallowed tax deductions for the face value of the
promissory notes.  No further contributions or investments were made to Texoil
Corp.       

Appellant acquired Texoil Corp. in 1989.  At the
time, the limited partnership investors owed as much as one billion dollars on
the promissory notes.  In 1996, appellant created Texoil L.L.C. to liquidate
the promissory notes.  Five of the 20 general partnerships in Texoil Corp. were
transferred to Texoil L.L.C., leaving Texoil Corp. with 15 of the general
partnerships and Texoil L.L.C. with five.  Appellant then attempted to collect
on the approximately 4,000 limited partnership notes.  Appellant claimed that
she had planned to monetize the notes by (1) allowing the limited partnership
investors to settle their Texoil debt for a fraction of the amount due, $50,000,
and (2) buying a life insurance policy on the lives of these investors.[1]  Texoil Corp. and
Texoil L.L.C. could immediately use the policies as collateral and would be paid
cash proceeds, $250,000, upon each of the investors’ deaths.  Appellant
persuaded the complainants, David Lamonica, Patricia Bond, and Charles
Steinberg, to invest funds in Texoil L.L.C. in order to assist her collection
of the limited partnership notes.   

A.  David Lamonica

David Lamonica, a licensed insurance producer, was
the first complainant to invest in Texoil L.L.C.’s collection efforts.  According
to Lamonica, appellant represented that she owned Texoil Corp. and Texoil L.L.C.
and that she was in possession of the thousands of limited partnership notes
executed in the 1980s.  Appellant explained to Lamonica that she had planned to
monetize the notes by allowing the limited partnership investors to settle
their Texoil debt for a fraction of the amount due and, in turn, obtain life
insurance policies on the lives of the investors.  Appellant offered Lamonica
two investment opportunities: (1) 10% of the funds recovered by the limited
partnership investors if Lamonica invested in appellant’s collection efforts,
and (2) commissions on any insurance policies he sold on the lives of the
limited partnership investors.  

In December 1998, Lamonica began a series of
investments, which ultimately totaled $175,000 over the next year.  With each
investment, Lamonica demanded that the investment be used solely for collection
efforts on the notes.  Even though appellant and her attorney assured Lamonica
that the notes were in appellant’s possession and that his investments would be
used for collection purposes, appellant never produced the notes, even upon
Lamonica’s demands.  Furthermore, no settlement letters were sent to the
original limited partnership investors, and no life insurance policies were obtained
on the lives of the investors.  After appellant failed to collect on the notes,
Lamonica stopped investing in Texoil L.L.C.  He later sued appellant for her
handling of his $175,000 investment in Texoil L.L.C.   

B.  Patricia Bond

Patricia Bond was the second complainant to invest in
Texoil L.L.C.’s collection efforts.  According to Bond, appellant represented
that she owned Texoil L.L.C. and was in possession of the thousands of limited
partnership notes worth a billion dollars.  In 1999, appellant offered Bond a
1% interest in Texoil L.L.C. and a return investment of $300,000 by the third
quarter of 2000 in consideration of a $100,000 investment.  Bond did not have $100,000
in cash but was able to use an interest in her ex-husband’s retirement plan
acquired during her divorce.  Because Bond’s interest was in a tax deferred
retirement plan, if the $100,000 was not repaid to the plan within 90 days,
severe tax penalties would be assessed.  Appellant convinced Bond that she
would be able to repay the $100,000 before the tax penalties were triggered and
that she would receive three $100,000 payments by the third quarter of 2000. 
Based on appellant’s representations, in August 1999, Bond withdrew the
$100,000 from the retirement plan, invested in Texoil L.L.C., and waited for
the return on her investment.  

When Bond failed to receive the $100,000, she was
unable to timely repay the plan; consequently tax penalties were assessed at $150,000. 
Bond never received any return on her investment.  Lamonica later contacted
Bond and persuaded Bond to join his civil suit against appellant.      

C.  Charles Steinberg

Charles Steinberg was the third complainant to invest
in Texoil L.L.C.’s collection efforts.  Appellant represented that she owned
Texoil L.L.C. and was in possession of the thousands of limited partnership notes
worth a billion dollars.  Initially, Steinberg was approached to help contact the
original limited partnership investors and communicate settlement offers.  Through
his company, AON, Steinberg would also assist in brokering the life insurance
policies that were part of the settlement offers.  Steinberg introduced
appellant to Fleet Bank of Boston (“Fleet Bank”), which could monetize the
notes.  

Fleet Bank required $100,000 to monetize the notes. 
Because neither appellant nor Texoil L.L.C. had the funds, Steinberg paid
$100,000 to appellant, who forwarded the payment to Fleet Bank.  When the bank
subsequently required an additional $100,000, Steinberg paid the second
$100,000 to appellant, who did not forward this $100,000 to Fleet Bank.  As a
condition of a line of credit to appellant, Fleet Bank required copies of the
life insurance policies obtained on the lives of the original limited
partnership investors.  Appellant rejected this condition.  Fleet Bank returned
$93,000 from the first $100,000 to appellant and made no further efforts to
monetize the notes.  No funds were returned to Steinberg.  

After many attempts to recover his $200,000
investment, Steinberg obtained a promissory note from appellant in the amount
of $200,000.  Appellant did not pay the note.  Thereafter, Lamonica contacted
Steinberg and persuaded Steinberg to participate in a forced bankruptcy
proceeding against Texoil L.L.C.  In 2004, Lamonica, Bond, and Steinberg forced
Texoil L.L.C. into Chapter 11 bankruptcy.  During the bankruptcy proceeding,
the trustee determined that the limited partnership notes were the only assets
belonging to Texoil L.L.C.  Accordingly, the bankruptcy judge ordered appellant
to produce the notes to the trustee.  Appellant attempted to produce the 20
general partnership notes but could not produce the limited partnership notes. 
She admitted that she was not in possession of the limited partnership notes
and did not know their location.                              

D.  Underlying Criminal Proceedings

In August 2005, a grand jury indicted appellant for
(1) misapplication of fiduciary property, (2) theft, and (3) misrepresentation
of material facts under the Texas Securities Act.  Appellant pleaded not guilty,
and her case was tried before the court.  Prior to trial, appellant sought to
quash the indictment for theft, arguing that it was barred by the applicable
statute of limitations.  The trial court denied her motion.

At trial, appellant disputed evidence that she told the
complainants she possessed the limited partnership notes.  According to
appellant, she never solicited an investment from Bond, and she told Lamonica that
she intended to collect only on the general partnership notes.  After hearing
testimony from the three complainants, the bankruptcy trustee, appellant, and security
and accounting experts, the trial court found appellant guilty of
misapplication of fiduciary property and theft.  Appellant received two
concurrent 20 year sentences for these convictions.  The trial court found
appellant not guilty of the securities fraud offense because it was barred by
the statute of limitations.       

In three issues, appellant contends that
(1) the evidence is legally and factually insufficient to uphold her
convictions, and (2) prosecution for the offense of theft was barred by the
applicable statute of limitations.  

II.  MISAPPLICATION OF FIDUCIARY PROPERTY

A.  Legal and Factual Sufficiency: Standards of Review

In her first two issues, appellant challenges the legal
and factual sufficiency of the evidence to uphold her conviction for
misapplication of fiduciary property and theft.  In a legal sufficiency review,
we view all the evidence in the light most favorable to the verdict and determine
whether a rational fact-finder could have found the defendant guilty of all the
elements of the offense beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319 (1979); Williams v. State, 270 S.W.3d 140, 142 (Tex.
Crim. App. 2008).  The fact-finder is the exclusive judge of the credibility of
witnesses and of the weight to be given to their testimony.  Lancon v. State,
253 S.W.3d 699, 707 (Tex. Crim. App. 2008).  Reconciliation of conflicts in the
evidence is within the fact-finder’s exclusive province.  Wyatt v. State,
23 S.W.3d 18, 30 (Tex. Crim. App. 2000) (quoting Losada v. State, 721
S.W.2d 305, 309 (Tex. Crim. App. 1986)).   We must resolve any inconsistencies
in the testimony in favor of the verdict.  Curry v. State, 30 S.W.3d
394, 406 (Tex. Crim. App. 2000).

In a factual sufficiency review, we review all the
evidence in a neutral light, favoring neither party.  Watson v. State,
204 S.W.3d 404, 414 (Tex. Crim. App. 2006).  We then ask (1) whether the
evidence supporting the conviction, although legally sufficient, is nevertheless
so weak that the verdict seems clearly wrong and manifestly unjust, or (2)
whether, considering the conflicting evidence, the verdict is against the great
weight and preponderance of the evidence.  Marshall v. State, 210 S.W.3d
618, 625 (Tex. Crim. App. 2006); Watson, 204 S.W.3d at 414–17.  We
cannot declare that a conflict in the evidence justifies a new trial simply because
we disagree with the fact-finder’s resolution of that conflict.  Watson,
204 S.W.3d at 417.  If an appellate court determines that the evidence is
factually insufficient, it must explain in exactly what way it perceives the
conflicting evidence greatly to preponderate against conviction.  Id. at
414–17.  

B.  Misapplication of Fiduciary Property

A person commits misapplication of fiduciary property
if she misapplies property, held as a fiduciary, and such misapplication
involves a substantial risk of loss to the owner of the property or to a person
for whose benefit the property is held.  See Tex. Penal Code Ann. § 32.45(a)–(b)
(Vernon Supp. 2009).  “Misapply” means to deal with property contrary (1) to an
agreement under which the fiduciary holds the property; or (2) by law
prescribing the custody or disposition of the property.  Id. §
32.45(a)(2).  The agreement need not be written, but must merely be a
harmonious understanding as to a course of action.  Bynum v. State, 767
S.W.2d 769, 777 (Tex. Crim. App. 1989).  “[A] fiduciary is one in whom another
has justifiably reposed confidence to act in a certain manner.”  Talamantez
v. State, 790 S.W.2d 33, 35 (Tex. App.—San Antonio 1990, pet. ref’d); see
also Coplin v. State, 585 S.W.2d 734, 735 (Tex. Crim. App. 1979)
(holding that fiduciary capacity includes joint adventurers, partners and other
fiduciary relationships not specifically mentioned in the statute).  Appellant
challenges the “misapplication” element, arguing that she acted in conformity
with her agreements with the complainants by exercising due diligence to
monetize the notes.  

The record reflects that appellant, acting as a fiduciary
to each of the complainants, misapplied the investment funds by acting contrary
to the investment agreements.  Lamonica testified that he invested a total of
$175,000 in Texoil L.L.C. under purchase and joint venture agreements.  Section
1.04 of the purchase agreement reflected that Lamonica’s investment was
necessary to implement a collection program for certain notes receivable.  Section
1.03(a) of the joint venture agreement with Texoil L.L.C. indicated that the
primary purpose of the venture was to collect certain notes receivable.  Lamonica
further testified that he and appellant agreed that the investment funds would
be used exclusively for the purpose of monetizing the limited partnership
promissory notes.  The evidence reflects that appellant did not use the
investment funds for that purpose.  

Lamonica testified that no settlement letters were
sent to the original limited partnership investors and that no life insurance
policies were obtained on the lives of the investors.  There was evidence that
appellant was never in possession of the limited partnership notes and made no
effort to monetize the notes; in fact, she abandoned a number of opportunities
to monetize the notes.  Furthermore, there is evidence that appellant spent Lamonica’s
investment funds on legal fees associated with her federal criminal case in
Illinois and with an automobile dealership.   

Bond testified that she withdrew $100,000 from a tax
deferred retirement plan and gave the funds to appellant as an investment in
Texoil L.L.C.  Appellant agreed that the investment funds would be used to
monetize the limited partnership notes.  Appellant convinced Bond that she
would be able to repay the $100,000 before the tax penalties were triggered and
that she would receive three $100,000 payments in the first three quarters of
2000.  Bond withdrew the $100,000 from the retirement plan and invested in
Texoil L.L.C.  Because she did not receive any return on her investment, Bond
was unable to timely repay $100,000 to the plan; consequently tax penalties
were assessed at $150,000.  Furthermore, the evidence reflects that none of
Texoil’s expenditures went to the collection of the limited partnership notes. 


Steinberg testified that he invested $200,000 in
Texoil L.L.C. for the purpose of monetizing the limited partnership notes. 
Steinberg and appellant agreed that the funds would be transferred to Fleet
Bank, who in turn would assist in monetizing the notes.  While appellant
forwarded Steinberg’s initial $100,000 to Fleet Bank, she did not forward the
second $100,000 to the bank.  Although Fleet Bank returned $93,000 to appellant
when she refused to provide copies of the life insurance policies, no funds
were returned to Steinberg.  The evidence reflects that appellant made no
further efforts to monetize the notes.  The evidence also reflects that none of
Texoil L.L.C’s expenditures went to the collection of the limited partnership
notes.  

Appellant heavily disputed the complainants’
testimony and identifies on appeal some inconsistencies in the complainants’
testimony.  The judge, as the fact finder, was the sole judge of the weight and
credibility given to any witness’s testimony.  See Johnson v. State,
23 S.W.3d 1, 7 (Tex. Crim. App. 2000).  The trial court’s verdict in this case
was not manifestly unjust merely because it resolved conflicting views of the
evidence in favor of the State.  See Cain v. State, 958 S.W.2d 404,
408–09 (Tex. Crim. App. 1997).  

We conclude that the evidence is legally and
factually sufficient to prove that appellant misapplied the complainants’
property by using the investment funds contrary to the investment agreements. 
The record reflects that Texoil L.L.C. held the investment funds for the
purpose of monetizing the limited partnership notes.  However, no settlement letters
were executed, no insurance policies were obtained, and no monetization of the
notes ever occurred.  Appellant admitted that she never possessed the limited
partnership notes.  Appellant abandoned many opportunities to monetize the
notes, and no complainant received his or her money back.  We overrule
appellant’s first issue.  

III.  AGGREGATE THEFT

Appellant challenges her theft conviction in her
second and third issues.  In her second issue, she claims that the evidence is
legally and factually insufficient to sustain her theft conviction.  In her
third issue, appellant argues that prosecution for theft was barred by the
statute of limitations.  We address the latter issue first.

Before trial, appellant filed a motion to quash the
indictment on the theft count based on the expiration of the statute of
limitations.  Appellant renewed her limitations challenge during trial.  The
trial court overruled both motions.  

A theft occurs when (1) property is (2) unlawfully
appropriated (3) by someone (4) with intent to deprive the owner of that
property.  Tex. Penal Code Ann. § 31.03.  The statute of limitations for felony
theft is five years.  Code Crim. Proc. Ann. art. 12.01(4)(A) (Vernon 2005).  The
Texas Penal Code allows multiple thefts committed pursuant to one scheme or
continuing course of conduct—at different times and against different victims—to
aggregate within one offense for purposes of the offense grade.  Tex. Penal
Code Ann. § 31.09.  Aggregation under section 31.09 creates a single new
offense for jurisdiction, punishment, and statute of limitations purposes.  Graves
v. State, 795 S.W.2d 185, 187 (Tex. Crim. App. 1990).  Each individual
theft and its elements become an element of the aggregate theft offense.  State
v. Weaver, 982 S.W.2d 892, 893 (Tex. Crim. App. 1998).  The limitations
period for aggregate theft begins to run after the last theft is completed.  Tita
v. State, 267 S.W.3d 33, 35 n.1 (Tex. Crim. App. 2008).  A theft is
complete when all the elements have occurred.  Barnes v. State, 824
S.W.2d 560, 562 (Tex. Crim. App. 1991), overruled on other grounds by
Proctor v. State, 967 S.W.2d 840, 842 (Tex. Crim. App. 1998).  Theft is not
a continuing offense—it does not continue as long as the actor retains control
of the stolen property.  Barnes, 824 S.W.2d at 562; see also Cupit v.
State, 122 S.W.3d 243, 246 (Tex. App.—Houston [14th Dist.] 2003, pet.
ref’d.).  Nor does the aggregate theft statute convert theft into a continuing
offense.  See Dickens v. State, 981 S.W.2d 186, 188 (Tex. Crim. App.
1998) (“Aggregated theft is the sum of all its parts.  A part is a completed
theft whose elements have all been proven.”).  Rather, aggregated theft is an
offense with continuing conduct that ends with the last theft, and not after.  Tita,
267 S.W.3d at 35 n.1 (noting that the date of the last theft is the end date of
the scheme or continuing course of conduct under the aggregate theft statute). 
Moreover, “[t]heft by exercising control is committed and the statute of
limitations commences once possession of the property becomes unlawful.”  Barnes,
824 S.W.2d at 562–63. 

The statute of limitations began to run in this case
when appellant committed the last theft; this occurred when she unlawfully appropriated
Steinberg’s money.  See id.  The evidence presented at trial shows that
the last transfer Steinberg made to appellant was on June 1, 2000.  Appellant
did not appropriate any additional funds after the June 1, 2000 transfer.   Therefore,
the statute of limitations on the offense of theft began to run on June 1,
2000, meaning that it expired on June 1, 2005.  Appellant was indicted on
August 17, 2005—outside the statute of limitations.  

The State does not dispute the date of the last unlawful
appropriation but characterizes other acts as an element of theft triggering
the statute after June 1, 2000.  The State argues that appellant’s subsequent
misrepresentations—made until well within the statute of limitations—completed
the theft.  According to the State, the theft was completed when appellant made
the last misrepresentation regarding the monetizing of the notes.  We reject
the State’s interpretation of the theft statute.  A theft has occurred when (1)
property is (2) unlawfully appropriated (3) by someone (4) with intent to
deprive the owner of that property.  Tex. Penal Code Ann. § 31.03.  When
appellant unlawfully appropriated Steinberg’s second $100,000, the other theft elements
were present.  Therefore, the theft was complete when appellant appropriated
the last $100,000.  While appellant continued to make misrepresentations
regarding the investment funds, those misrepresentations did not create a new
theft offense within the scheme because no additional property was
appropriated.  See id.  A theft occurs only when there is an unlawful appropriation
of property.  The subsequent misrepresentations, alone, did not create a new
theft in the scheme.  

Accordingly, we conclude that the prosecution for
theft was barred by the statute of limitations.  We sustain appellant’s third
point of error.[2] 
We reverse appellant’s conviction for theft and render judgment of acquittal
for the theft conviction.  We affirm the verdict for misapplication of
fiduciary property.  

 

                                                                                    

                                                                        /s/        Adele
Hedges

                                                                                    Chief
Justice

 

 

 

Panel consists of Chief
Justice Hedges and Justices Yates and Boyce.

Publish— Tex. R. App. P. 47.2(b).









[1] “Monetize” means to coin
into money, assigning a present dollar value to something lacking an easily
ascertainable present value.  See Webster’s
Third New Int’l Dictionary 1458 (1993).  In this case, the limited
partnership promissory notes would not have had a present value because they
would be paid for with the insurance policies on the lives of the original
investors.  The cash proceeds from those insurance policies would not be paid
out until the death of the investor.  Therefore, in order to use the notes as
ready money, the notes would have had to be monetized based on the present
value of the life insurance policies used to purchase the notes.   





[2] Having concluded that the
theft count was barred by the statute of limitations, we do not reach appellant’s
second issue challenging the sufficiency of the evidence.