Affirmed and Memorandum Opinion
filed February 1, 2011.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00973-CR



Nicole Estelle
Green, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 263rd District Court

Harris County, Texas

Trial Court
Cause No. 0794510



 

MEMORANDUM OPINION 

Appellant Nicole Estelle Green was convicted of
murder and sentenced to thirty years’ confinement.  In three issues, she
challenges the sufficiency of the evidence to support her conviction and
contends that she received ineffective assistance of counsel.  We affirm.

I.                  
Factual and
Procedural Background

On October 3, 1998, the decedent and Anthony Wong were
leaving a Houston night club when they encountered appellant and her sister,
Tiffany Boyd.  The decedent and Wong knew Boyd because Boyd had arranged to
rent an apartment on Wong’s behalf; Wong and the decedent each lived in the
apartment at one point.  Wong testified that Boyd tripped him, and then Boyd
and appellant followed him, the decedent, and another friend out of the club.  Wong
stated that appellant approached the decedent and told him that she knew where
he lived and she was going to kill him.  Wong testified that the decedent was
offended by appellant’s remarks and wanted to confront her in the parking lot. 
The decedent and appellant argued.  Someone said the police were coming and the
parties left the first club.  Boyd’s version of events differs.  She testified
that Wong and the decedent pushed her as she tried to enter the club and then
five or six men with weapons surrounded her.  She stated that she notified a
police officer outside, and he advised her to leave.  Eventually, the parties
went to a second club.

At the second club, the decedent and Boyd began
fighting in the parking lot.  Wong testified that Boyd was the aggressor and that
the decedent was trying to defend himself.  Wong started running towards them
and felt something hit his leg.  As he was falling, Wong looked behind him and
saw appellant standing on the running board of a vehicle firing a gun.  He
testified that appellant pointed the gun at him and at the decedent while she
was shooting.  Wong stated that after he was shot a second time, he saw appellant
and Boyd get into the vehicle and drive off. 

Boyd’s and appellant’s accounts at trial differed
from Wong’s description.  Boyd testified that the decedent put a gun in her
face, she pushed him backwards, and he shot her in the hand.  Boyd stated that
she fell to the ground and crawled to the passenger’s side of the vehicle she
arrived in.  While she was doing so, she heard gunshots.  She testified that
neither she nor her sister had a weapon.  Appellant testified that the decedent
rushed up to her sister and the two began arguing.  She then stated that the
decedent and Wong, who appellant said was carrying a weapon, rushed up to her,
she heard a gunshot, everyone started screaming, and a man handed her a gun. 
Appellant admitted to shooting Wong; she stated, however, that the decedent was
already “going down” when she shot at Wong.  

Several witnesses at the scene also testified.  Lanaydria
Chevis, the decedent’s wife, was in the parking lot to pick up her husband from
the club when the events took place.  Chevis testified that she heard the
decedent and a woman “fussing and cussing” at each other.  When Chevis exited
her vehicle and walked behind the truck she was parked next to, she saw
appellant “get on the side of the car and take a gun and shoot [the decedent]
dead and he fell.”  Chevis got in her vehicle and attempted to pursue
appellant’s vehicle before returning to the scene.  Shanquelyn Druilhet, a
friend of Chevis’s, witnessed the decedent and Boyd fighting.  She testified
that appellant climbed on the ledge of a vehicle, pointed a gun at the decedent,
and began firing.  

E.W. Walker, a Houston police officer, stopped by the
second club to see a friend after work.  He witnessed a female exit a vehicle
and start yelling at two men.  Walker stated that the female yelled out to the
males and one of the males turned around and said something back to her.  The
female then shot the male who had responded to her.  The other male turned
around and said something to her, and the female shot him.  Walker pursued the
vehicle before returning to the scene.  Angelo Rayson was also at the club that
night.  He heard five people arguing.  He looked up after hearing gunshots and
saw appellant standing over a vehicle pointing a weapon at Wong.  He testified
that a male was pointing a weapon at the decedent.  Clarence Ford was working
at the second club.  He heard an argument between a male and female.  He then
heard two gunshots.  Ford observed a female speed off in a vehicle.   

Several Houston Police Department employees and a
medical examiner testified.  Appellant challenges the testimony of three of
those individuals:  (1) Officer Eric Mehl; (2) Darrell Stein; and (3) Dr. Stephen
Wilson.  Officer Mehl generated a photo array including appellant’s photo. 
Chevis and Druilhet identified appellant in the photo array.  Officer Mehl also
testified that he ruled out E.W. Walker as a potential fact witness because Walker
told him he did not see the shooting occur or the suspects involved and Walker
thought the gunshots were coming from a nearby apartment complex. 

Stein, a firearms examiner, stated that he was able
to determine that the casings were all fired from the same gun and the two
bullets were fired from the same gun.  The evidence indicated that all were
fired from a .45 auto firearm.  However, Stein could not say conclusively that
all of the ballistics evidence that he evaluated was fired from the same firearm
because he did not have the firearm.  

Dr. Wilson testified that the decedent’s injury was a
gunshot wound to the chest.  Dr. Wilson performed a toxicology test as part of
the autopsy.  The decedent tested positive for alcohol at a “fairly high
level.”  No gunshot residue test was performed to determine whether the
decedent’s hands had been near a firearm when it was fired.

Appellant was apprehended in 2007 in Atlanta,
Georgia.  She was charged by indictment with murder.  A jury found her guilty
and assessed punishment at thirty years’ confinement.

II.              
Analysis

A.    Sufficiency
of the Evidence

In her first two issues, appellant argues that the
evidence is legally and factually insufficient to support her conviction.  While
this appeal was pending, the Court of Criminal Appeals held that only the legal
sufficiency standard should be used to evaluate the sufficiency of the evidence
in a criminal case.  Brooks v. State, 323 S.W.3d 893, 895 (Tex.
Crim. App. 2010) (plurality opinion); id. at 926 (Cochran, J.,
concurring).  Accordingly, we review the sufficiency of the evidence in
this case under a rigorous and proper application of the Jackson v. Virginia[1] legal
sufficiency standard.  Brooks, 323 S.W.3d at 906.

In a legal sufficiency review, we view all the
evidence in the light most favorable to the verdict and determine whether a
rational fact-finder could have found the defendant guilty of all the elements
of the offense beyond a reasonable doubt.  Jackson v. Virginia, 443
U.S. 307, 319 (1979); Williams v. State, 270 S.W.3d 140, 142 (Tex. Crim.
App. 2008).  We must give deference to “the responsibility of the trier of
fact to fairly resolve conflicts in testimony, to weigh the evidence, and to
draw reasonable inferences from basic facts to ultimate facts.”  Hooper
v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson,
443 U.S. at 319).  Thus, we defer to the fact finder’s resolution of
conflicting evidence unless the resolution is not rational.  Brooks,
323 S.W.3d at 899.  

As it applies to this case, a person commits the
offense of murder if she “intentionally or knowingly causes the death of an
individual” or “intends to cause serious bodily injury and commits an act
clearly dangerous to human life that causes the death of an individual.”  Tex.
Penal Code Ann. § 19.02(b)(1)-(2) (West 2003).  When the charge authorizes the
jury to convict on more than one theory, as it did in this case, we uphold the
guilty verdict if the evidence is sufficient on any one of the theories.  Guevara
v. State, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).  The jury charge also
included an instruction and application paragraph on the law of transferred
intent, tracking section 6.04(b)(2) of the Texas Penal Code.  See Tex.
Penal Code Ann § 6.04(b)(2) (West 2003) (“A person is nevertheless criminally
responsible for causing a result if the only difference between what actually
occurred and what he desired, contemplated, or risked is that a different
person . . . was injured, harmed, or otherwise affected.”).  

Appellant contends that the evidence is insufficient
to support her conviction because (1) Druilhet testified that she heard five
shots, not two, stated on cross-examination that she did not see who shot the
decedent, and stated that there was a man near the passenger’s side of
appellant’s car who drew a weapon after appellant started shooting; (2) Walker
testified that he heard four shots and stated that he did not see weapons on
the decedent or Wong; (3) Officer Mehl discredited the testimony of Walker; (4)
Stein testified that he could not determine whether all of the firearm evidence
was fired from the same gun; (5) Dr. Wilson testified that the decedent was
intoxicated and Dr. Wilson did not perform a gunshot residue test; (6) Boyd
testified that the decedent and Wong had guns, the decedent put a gun in her
face, and as she pushed him backwards the decedent shot her in the hand; (7)
Wong had a motive to be untruthful; and (8) appellant testified that she heard
a gunshot, someone gave her a gun, she shot it to protect herself and her
sister, and the only person she shot was Wong.

The testimony of a single eyewitness can be legally
sufficient to support a conviction.  See Aguilar v. State, 468 S.W.2d
75, 77 (Tex. Crim. App. 1971).  Here, Wong testified that appellant pointed a
gun at him and the decedent while she was shooting and he was “sure she shot
both of us.”  Chevis testified that she saw appellant “get on the side of the
car and take a gun and shoot [the decedent] dead and he fell.”  Druilhet
testified that appellant climbed on the ledge of a vehicle, pointed a gun at
the decedent, and began firing.  Chevis and Druilhet identified appellant from
a photo array.  While there may have been conflicting evidence, we defer to the
fact-finder’s resolution of conflicting evidence unless the resolution is not
rational.  Brooks, 323 S.W.3d at 899.  In addition, this court does not
sit as a thirteenth juror and may not substitute its judgment for that of the
fact finder by re-evaluating the weight and credibility of the evidence.  See
id. at 911-12.  Viewing all of the evidence in the light most
favorable to the verdict, a rational fact-finder could have found appellant
guilty of murder beyond a reasonable doubt.

Therefore, we overrule appellant’s first and second
issues.

B.     Ineffective
Assistance of Counsel

In her third
issue, appellant contends that she received ineffective assistance of counsel
because her trial counsel failed to (1) make an opening statement after the
State; (2) object to witness characterization of appellant as “the shooter”;
(3) submit medical proof of a witness’ having been shot; and (4) poll the jury.

We apply a two-prong test in reviewing claims of
ineffective assistance of counsel. See Salinas v. State, 163 S.W.3d 734,
740 (Tex. Crim. App. 2005) (citing Strickland v. Washington, 466 U.S.
668 (1984)).  To prove ineffective assistance, an appellant must show by a
preponderance of the evidence that (1) her counsel’s performance was deficient
because it fell below the standard of prevailing professional norms, and (2)
there was a reasonable probability that, but for counsel’s errors, the result
of the proceeding would have been different.  Id.

When determining the validity of an
ineffective-assistance-of-counsel claim, there is a strong presumption that
counsel’s conduct fell within the wide range of reasonable professional
assistance.  Thompson v.
State, 9 S.W.3d 808, 813 (Tex. Crim. App.
1999). We also indulge a strong presumption that counsel’s actions
were motivated by sound trial strategy, and we will not conclude that the
action was deficient unless it was so outrageous that no competent attorney
would have engaged in such conduct.  Garcia v.
State, 57 S.W.3d 436, 440 (Tex. Crim. App.
2001).  However, when no reasonable trial strategy could justify
trial counsel’s conduct, counsel’s performance falls below an objective
standard of reasonableness as a matter of law, regardless of whether the record
adequately reflects trial counsel’s subjective reasons for acting as he did.  Andrews v.
State, 159 S.W.3d 98, 102 (Tex. Crim. App.
2005).

Any allegation of ineffectiveness must be firmly
founded in the record, and the record must affirmatively demonstrate the
alleged ineffectiveness.  Thompson, 9 S.W.3d at 813.  In
the majority of cases, the record on direct appeal is simply undeveloped and
cannot adequately reflect the alleged failings of trial counsel. Jackson v.
State, 973 S.W.2d 954, 957 (Tex. Crim. App.
1998) (per curiam).  This is particularly true when the alleged
deficiencies are matters of omission and not of commission revealed in the
record.  Id.  A proper record is best developed in a habeas corpus
proceeding or in a motion for new trial hearing.  Jensen v.
State, 66 S.W.3d 528, 542 (Tex.
App.—Houston [14th Dist.] 2002, pet. ref’d).  Although appellant
filed a motion for new trial, she did not raise ineffective assistance of
counsel in the motion.  The motion was overruled by operation of law.  See
Tex. R. App. P. 21.8.

Opening Statement:  Appellant contends that her
trial counsel was ineffective because he should have given his opening
statement immediately following the State’s opening statement.  Because an
opening statement provides the State with a preview of the defense’s strategy, trial
counsel may have made the tactical decision not to make an opening statement
until later.  See Standerford v. State, 928 S.W.2d 688, 697 (Tex.
App.—Fort Worth 1996, no pet.) (holding no ineffective assistance of counsel
when trial counsel did not make an opening statement at all); see also
Rylander v. State, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003) (stating that
not making opening statement during punishment phase, among other alleged
errors, alone is not sufficient to show ineffective assistance in face of
silent record).  

No objection to characterization:  Appellant
contends that her trial counsel was ineffective because he failed to object to
Wong’s labeling of appellant as “the shooter” and Boyd as “the shooter’s
sister.”  She argues that this error was compounded by the State when the
prosecutor, during questioning of the witness, referred to appellant and Boyd
using those labels.  Wong testified that appellant was the person who shot him
prior to referring to her as “the shooter.”  He stated that he had difficulty
remembering appellant’s and Boyd’s names, so he referred to them, without
objection, as “the shooter” and “the shooter’s sister” to avoid ambiguity in
his testimony.  He then identified appellant in court as the person “who shot
and killed my friend and shot me twice.”  After the identification, the
prosecutor stated that he would refer to appellant as “the shooter” and her
sister as “the shooter’s sister.”  

In the absence of evidence of trial counsel’s reasons
for not objecting to the use of the terms “shooter” and “shooter’s sister,” we
do not find deficient performance unless the challenged conduct was “so
outrageous that no competent attorney would have engaged in it.”  See Garcia,
57 S.W.3d at 440.  Even if appellant demonstrates deficient assistance, she
must also affirmatively prove prejudice.  See Thompson, 9 S.W.3d at
812.  Appellant claims the reference was prejudicial because the jury would
“feel immediately that the appellant was the person firing the gun during the
incident.”  However, Wong, prior to labeling appellant as “the shooter,” had
testified that appellant was the person who shot him.  In addition, several
other witnesses testified that appellant was the person doing the shooting
during the incident.  

No medical proof:  Appellant contends that her
trial counsel was ineffective because he should have submitted medical proof of
Boyd’s hand wound to support Boyd’s testimony that the decedent shot her.  Boyd
testified that she sought medical attention at the hospital where she worked,
but she did not know whether hospital personnel created a medical record of her
visit.  Counsel’s failure to present certain evidence is irrelevant absent a
showing that such evidence was available and that appellant would have
benefitted from the evidence.  See King v. State, 649 S.W.2d 42, 44
(Tex. Crim. App. 1983).

Polling the jury:  Appellant contends her
trial counsel was ineffective because he did not poll the jury.  While the Code
of Criminal Procedure allows the jury to be polled, there is no requirement
that trial counsel do so.  See Tex. Code Crim. Proc. Ann. art. 37.05
(West 2006).  

The record does not
affirmatively demonstrate ineffectiveness, particularly given the strong
presumption that counsel was motivated by sound trial strategy.  See Garcia,
57 S.W.3d at 440.  Accordingly, appellant has failed to meet her burden of
proving ineffectiveness by a preponderance of the evidence.  See Thompson,
9 S.W.3d at 813.  We overrule appellant’s third issue.

III.           
Conclusion

Having overruled appellant’s issues, we affirm the
judgment of the trial court.








                                                                                    

                                                                        /s/        Adele
Hedges

                                                                                    Chief
Justice

 

Panel
consists of Chief Justice Hedges and Justice McCally and Senior Justice Mirabal.*

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1]
443 U.S. 307, 319 (1979).





* Senior Justice Margaret Garner Mirabal
sitting by assignment