

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0470-07

### ARTHUR LEE WILLIAMS, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE NINTH COURT OF APPEALS
### MONTGOMERY COUNTY

MEYERS, J., delivered the opinion of the Court in which WOMACK, KEASLER, HERVEY, and HOLCOMB, JJ., joined. KELLER, P.J., joined except for Footnote 2. WOMACK, J., filed a concurring opinion. PRICE and COCHRAN, JJ., concurred in the judgment. JOHNSON, J., dissented.

### O P I N I O N

Appellant, Arthur Lee Williams, was convicted of tampering with physical

evidence under section 37.09(a)(1) of the Texas Penal Code and sentenced to twenty-five

years of confinement.[1]  Appellant appealed and the court of appeals affirmed.  We granted review to consider the legal sufficiency of the evidence.  We will affirm.

## I.     FACTS

A police officer patrolling a high-crime neighborhood followed a car occupied by Appellant and Darrell Fields.  Fields parked on the wrong side of the street in front of a house known by the officer to be a crack house.  The officer, Michael Stowe, stopped behind the car.  As Officer Stowe approached the car, he observed Appellant in the front passenger seat, moving his hands around his waistband, which caused Officer Stowe to suspect that Appellant could be concealing a weapon.  Officer Stowe performed a weapons pat-down on both Fields and Appellant.  During the pat-down of Appellant, Officer Stowe heard an object hit the ground.  Looking down, Officer Stowe recognized the fallen object as an intact crack pipe.  In that instant, Appellant stomped on the crack pipe, breaking it into pieces.

At trial, the State presented the pieces of the pipe Officer Stowe was able to collect that night, including a copper mesh filter and broken glass.  The State also offered, as a demonstrative exhibit, an intact crack pipe to show the jury how the remnants appeared in their former physical state.  The jury convicted Appellant of tampering with physical evidence, and the court assessed a sentence of twenty-five years of confinement.  TEX. PENAL CODE ANN. § 37.09(a)(1) (Vernon 2003).  Appellant appealed, arguing seven

---

[1]Unless otherwise specified, all future references to sections refer to the Texas Penal Code.

issues, four of which addressed the legal and factual sufficiency of the evidence establishing that he knew the crack pipe was evidence in the investigation and that the crack pipe was destroyed within the meaning of the law. *Williams v. State*, No. 09-06-103-CR, 2007 Tex. App. LEXIS 892 (Tex. App.–Beaumont Feb. 7, 2007, pet. granted) (mem. op., not designated for publication). The court of appeals affirmed the trial court, concluding that a rational jury could have found beyond a reasonable doubt that Appellant knew the crack pipe was evidence in the investigation-in-progress, and that the crack pipe was destroyed within the meaning of the law. *Id.*

We granted Appellant's petition for discretionary review to determine whether the court of appeals erred in holding that the evidence was legally sufficient to establish the following two points: (1) Appellant's knowledge that a crack pipe was evidence in the criminal investigation that was in progress, and (2) that Appellant destroyed evidence, specifically a crack pipe, within the meaning of the law.

## II. STANDARD OF REVIEW

In evaluating the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the jury's verdict and determine whether a rational jury could have found the defendant guilty of all of the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307 (1979); *Swearingen v. State*, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003). The due-process guarantee demands that we reverse and order a

judgment of acquittal if a rational jury would entertain a reasonable doubt as to the defendant's guilt. *Swearingen*, 101 S.W.3d at 95.

## III.    TEXAS PENAL CODE SECTION 37.09(a)(1)

Three elements define the offense of tampering with physical evidence: (1) knowing that an investigation or official proceeding is pending or in progress, (2) a person alters, destroys, or conceals any record, document, or thing, (3) with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding. § 37.09(a)(1).

The three elements of section 37.09(a)(1) include "two different culpable mental states"–knowledge and intent. *Stewart v. State*, 240 S.W.3d 872, 874 (Tex. Crim. App. 2007). The statute requires the knowledge of an investigation and the intent to impair a thing's availability as evidence. As defined by the Texas Penal Code, "[a] person acts knowingly, or with knowledge, with respect . . . to circumstances surrounding his conduct when he is aware . . . that the circumstances exist." TEX. PENAL CODE ANN. § 6.03(b) (Vernon 2003). In contrast, "[a] person acts intentionally, or with intent, with respect . . . to a result of his conduct when it is his conscious objective or desire to . . . cause the result." TEX. PENAL CODE ANN. § 6.03(a) (Vernon 2003).

Appellant's indictment specifically alleged the following: "knowing that an investigation was in progress, to-wit: checking [Appellant] for weapons, [Appellant]

intentionally and knowingly destroy[ed] drug paraphernalia, to-wit: a crack pipe, with intent to impair its verity and availability as evidence in the investigation."

## IV.     KNOWLEDGE THAT THE CRACK PIPE WAS EVIDENCE

Appellant challenges the legal sufficiency of the evidence establishing his knowledge that the crack pipe was evidence in the criminal investigation that was in progress.  He asserts that the State failed to prove that an investigation was in progress in which the broken crack pipe might have served as evidence.  Using the analysis presented in *Pannell v. State*, 7 S.W.3d 222 (Tex. App.–Dallas 1999, pet. ref'd), Appellant argues that when stepping on the crack pipe, he could not have intended to impair its availability as evidence in the investigation because he did not know that a drugs investigation was in progress.  In *Pannell*, the Fifth Court of Appeals acquitted an appellant who threw marihuana out of a car window during a traffic investigation, concluding that section 37.09(a)(1) required the appellant to "be aware that the thing he altered, destroyed, or concealed was evidence in the investigation as it existed at the time of the alteration, destruction, or concealment."  *Id.* at 223.  The court reasoned that there was no investigation, pending or in progress, in which the marihuana could have served as evidence.  *Id.* at 224.

In this case, the court of appeals accepted *Pannell*'s statutory interpretation, requiring Appellant's awareness that the crack pipe was evidence in a criminal investigation that was in progress.  In order to find this element satisfied, the court of

appeals decided that the investigation-in-progress transformed from a weapons investigation to a drugs investigation the moment the crack pipe fell from Appellant's pants. *Williams*, 2007 Tex. App. LEXIS 892 at *7. Therefore, when Appellant stepped on the crack pipe, the investigation was no longer a weapons investigation, but was, at that point, a drugs investigation; and, Appellant would have been "aware" that the crack pipe was evidence in the investigation as it existed at the time of destruction. By categorizing the investigation in this way, the court harmonized the evidence destroyed, a crack pipe, with the investigation-in-progress, "an investigation for drugs and/or drug paraphernalia." *Id.*

Other cases following *Pannell* have similarly analyzed the events leading up to the alteration, destruction, or concealment of evidence in order to classify the investigation. *See Whitlock v. State*, No. 12-05-00206-CR, 2006 Tex. App. LEXIS 5301, at *7 (Tex. App.–Tyler June 21, 2006, no pet.) (mem. op., not designated for publication); *Dooley v. State*, 133 S.W.3d 374, 378 (Tex. App.–Austin 2004, pet. ref'd); *Lumpkin v. State*, 129 S.W.3d 659, 663 (Tex. App.–Houston [1st Dist.] 2004, pet. ref'd). This effort makes sense when the indictment does not specifically allege the type of investigation-in-progress. *See Lumpkin*, 129 S.W.3d at 662; *Lewis v. State*, 56 S.W.3d 617, 624 (Tex. App.–Texarkana 2001, no pet.).

But the indictment in this case is not silent as to the title of the investigation. The problem with the court's analysis is that it ignores the language of the indictment, which

specifically names the investigation-in-progress a "weapons" investigation, not "an investigation for drugs and/or drug paraphernalia."[2] *Williams*, 2007 Tex. App. LEXIS 892 at *7. We do not need to change the title of the investigation from a weapons investigation to a drugs investigation in order to find Appellant in violation of section 37.09(a)(1). *Pannell* requires that change, but the statute does not. *Pannell* grafts a fourth element onto section 37.09(a)(1), and a narrow reading of the statute does not support *Pannell*'s conclusion that a person must be "aware that the thing he altered, destroyed, or concealed was evidence in the investigation as it existed at the time of the

---

[2]Because the name of the investigation can be considered an extra detail in an indictment alleging a violation under section 37.09(a)(1), this situation could be analyzed under surplusage law, had that rule not been overruled by this Court in *Gollihar v. State*, 46 S.W.3d 243, 256-57 (Tex. Crim. App. 2001). *See also Santana v. State*, 59 S.W.3d 187, 195 (Tex. Crim. App. 2001) (stating, "We explicitly overruled the surplusage rule and the *Burrell* exception in *Gollihar*."). Surplusage is an allegation in a charging instrument that is not legally essential to constitute the offense. *Gollihar*, 46 S.W.3d at 249. The surplusage doctrine stated, "allegations which are not essential to constitute the offense, and which *might be entirely omitted without affecting the charge against the defendant, and without detriment to the indictment,* are treated as mere surplusage" and may be disregarded. *Whetstone v. State*, 786 S.W.2d 361, 364 (Tex. Crim. App. 1990). But, where an extra or unnecessary allegation described something legally essential to charge the crime, the *Burrell* exception required the State to prove the surplusage as alleged. *Gollihar*, 46 S.W.3d at 250. In *Gollihar*, we overruled the surplusage rule and the *Burrell* exception, and announced that the fatal variance doctrine would be the tool with which to resolve surplusage problems. *Id.* at 257 n.21. However, the fatal variance doctrine does not apply to this case. A variance exists "when there is a discrepancy between the allegations in the charging instrument and the proof at trial." *Id.* at 246. "In a variance situation, the State has proven the defendant guilty of a crime, but has proven its commission in a manner that varies from the allegations in the charging instrument." *Id.* The fatal variance doctrine provides that a variance between the wording of the indictment and the proof at trial is fatal only if it prejudices the defendant's substantial rights and is material. *Id.* at 257. In this case, there is no variance problem. The indictment states that a weapons investigation was in progress, and that corresponds to Officer Stowe's trial testimony.

alteration, destruction, or concealment." *Pannell*, 7 S.W.3d at 223. First, contrary to *Pannell*'s interpretation, the statute includes two, not three, mental-state requirements: the knowledge of an investigation and the intent–the conscious objective–to impair a thing's availability as evidence in the investigation. *Pannell*'s insertion of a fourth element adds a mental-state requirement not present in the language of the statute. Second, *Pannell*'s additional element presumes that an offender will have evaluated and correctly assessed a thing's evidentiary status upon its destruction. By not requiring an exercise in evidentiary theory, the statute is more reflective of investigatory reality, envisioning an offender who intends for, but is not necessarily aware of, the impairment of something's role as evidence in the investigation.

In conclusion, Appellant's challenge depends upon an additional element to section 37.09(a)(1), introduced by *Pannell*. This element is not supported by the language of the statute and, therefore, Appellant's challenge has no statutory foundation. Moreover, *Pannell*'s fourth element renders the statute impractical and unfit for its purpose.

Appellant's argument highlights the lack of coordination within the indictment, which names a crack pipe as evidence in a weapons investigation. But the title of the investigation and the evidence destroyed need not match in an indictment alleging an offense under section 37.09(a)(1), as long as the offender destroyed a thing with the intent to impair its availability as evidence in an investigation that he knows is in progress. In

this case, the elements of the offense are satisfied. During a weapons pat-down, Appellant stepped on the crack pipe the instant it fell into the officer's view, crushing it into pieces. Considering the evidence in the light most favorable to the jury's verdict, a rational jury could have found beyond a reasonable doubt that, knowing a weapons investigation was in progress, Appellant destroyed a crack pipe with the conscious objective to impair its availability as evidence in the investigation.

## V.     DESTRUCTION OF EVIDENCE

Appellant challenges the legal sufficiency of the evidence establishing that he destroyed evidence, the crack pipe, within the meaning of the law. Though section 37.09(a)(1) provides for alteration, destruction, or concealment, the indictment alleged only that Appellant destroyed the crack pipe. Appellant argues that the crack pipe was not destroyed, as defined by *Spector v. State*, 746 S.W.2d 945 (Tex. App.–Austin 1988, no pet.), because the glass shards and copper mesh filter, admitted into evidence at trial, retained some evidentiary value.

In *Spector*, the appellant tore a marihuana cigarette in two and "threw the pieces toward a ditch." *Id.* at 946. On appeal, she asserted that the evidence could not have been destroyed because the contents of the cigarette were used to convict her. *Id.* at 945. In support of the charge, the State argued that the cigarette had been destroyed because the recovered contents had "lost their identity as a cigarette." *Id.* at 945-46. In its analysis, the court of appeals announced two definitions of "destroyed" and ultimately

concluded that the torn cigarette was not destroyed. *Id.* at 946. The first definition stated that "something is destroyed . . . when its evidentiary value is destroyed." *Id.* Without a loss of evidentiary value, changes in physical form "are mere *attempts* to destroy or alterations." *Id.* The second definition provided for the situation where a part of an object is recovered. In such a case, the evidence is destroyed "when the part recovered has less evidentiary value than the whole." *Id.*

In Appellant's case, the court of appeals determined that the collected pieces of the shattered pipe satisfied the test prescribed by *Spector* and that the crack pipe was destroyed. In concluding that the recovered parts had less evidentiary value than the whole crack pipe, the court of appeals relied heavily on its assessment that the crack pipe in its present state was "no longer recognizable." *Williams*, 2007 Tex. App. LEXIS 892 at *9. This assessment was supported by the fact that the State showed an intact crack pipe as a demonstrative exhibit to accompany Officer Stowe's description of a crack pipe's appearance. *Id.*

As it is applied, *Spector*'s two-part definition for finding a thing "destroyed" under section 37.09(a)(1) inhibits the State from offering collected remains as evidence at trial and, in effect, requires absolute nonexistence. The first definition, requiring that a thing have no evidentiary value in order to be "destroyed," renders the State unable to offer physical evidence of the item at issue. If the State introduces any remains as evidence, an essential element of the offense disappears because, upon being admitted, the remains

have evidentiary value, and thus, are not "destroyed." In apparent contradiction to the first definition, the second definition in *Spector* allows recovered parts of a destroyed thing to have evidentiary value, if they have less evidentiary value than the whole. But according to the analysis in that case, a torn cigarette thrown in a ditch does not have less evidentiary value than a complete cigarette. So it remains unclear how anything could be "destroyed" under either part of this standard when parts are recovered.

To interpret the use of "destroys" in section 37.09(a)(1), "we necessarily focus our attention on the literal text of the statute." *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). Because "every word in a statute has been used for a purpose" and because "each word, phrase, clause, and sentence should be given effect if reasonably possible," "destroys" must have an effect distinct from "alters" and "conceals." *State v. Hardy*, 963 S.W.2d 516, 520 (Tex. Crim. App. 1997). We "first attempt to interpret the statute based on the plain meaning of the words used." *Olivas v. State*, 203 S.W.3d 341, 345 (Tex. Crim. App. 2006). The Penal Code does not statutorily define "destroys." In the absence of statutory definitions, "we turn to the common, ordinary meaning of that word." *Id.* Webster's Dictionary defines "destroy" as:

1. to demolish; to tear down; as, to *destroy* a house, to *destroy* a city.
2. to ruin; to bring to naught; to spoil completely; as, to *destroy* a scheme, to *destroy* a government, to *destroy* one's happiness.
3. to take away the utility of; to make useless.
4. to put an end to; to do away with.
5. to kill.
6. to neutralize the effect of.
7. to confute; to disprove.

NOAH WEBSTER, WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 495 (2d ed. 1983).

Not one of Webster's definitions mentions a complete lack of physical existence. A demolished, ruined, or killed thing still has remains. And, contrary to the definition in *Spector*, the remains of a destroyed object can still have evidentiary value. We interpret section 37.09(a)(1) to mean that a destroyed thing has been ruined and rendered useless. This interpretation of "destroy" is, as required, distinct from "conceal" and from "alter," which Webster's Dictionary defines as: "to change; make different; modify." *Id.* at 52. Moreover, our interpretation of destroyed to mean ruined and rendered useless echoes a factor suggested by the State in *Spector* and the court of appeals in this case: that a thing is destroyed when it has lost its identity and is no longer recognizable. *Williams*, 2007 Tex. App. LEXIS 892 at *9; *Spector*, 746 S.W.2d at 945-46.

In this case, the crack pipe was ruined and rendered useless when Appellant stepped on it and broke it into pieces. Officer Stowe testified that he was unable to retrieve every piece of the shattered crack pipe, and even if the recovered pieces could have been glued together in an attempt to reconstruct the evidence to its former physical state, it would be less than a complete crack pipe. That the State introduced the recovered pieces only after showing a complete crack pipe as a demonstrative exhibit indicates that the glass shards and copper mesh filter had lost their identity as a crack pipe and were not recognizable as a crack pipe. Therefore, the crack pipe was destroyed.

**VI.    CONCLUSION**

Considering the evidence in the light most favorable to the jury's verdict, a rational jury could have found beyond a reasonable doubt that Appellant destroyed a crack pipe, knowing a weapons investigation was in progress, with intent to impair its availability as evidence in the investigation.  The judgment of the court of appeals is affirmed.

Meyers, J.

Delivered: November 26, 2008

Publish