Affirmed and Memorandum Opinion filed February 26, 2009








Affirmed and Memorandum Opinion filed February 26, 2009.

                                                                                                                                                            

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00931-CR

____________

 

MICHAEL RAITANO, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 337th
District Court

Harris County, Texas

Trial Court Cause No. 1129118

 



 

M E M O R A N D U M   O P I N I O N

Appellant, Michael Raitano, appeals his conviction for
felony aggregate theft for which he was sentenced to 18 years in prison.  In
two issues, he contends that the evidence is legally and factually insufficient
on the element of Aintent to deprive@ the complainants
of their property.  We affirm.

BACKGROUND








Appellant was charged with aggregate theft for illegally
towing vehicles and demanding money from the complainants, the owners of the
vehicles, to recover their property.  Prior to trial, appellant had been a tow
truck driver in the Houston area for approximately 30 years.  He operated his
wrecker business under at least three names: Raitano=s Wrecker Service,
RWS, and Advantage Towing.  Under these business names, appellant entered into
various contracts with private property owners throughout Houston and
surrounding areas, in which he agreed to tow unwanted vehicles from
privately-owned parking lots according to the terms of the contracts.  

The occurrence that is the basis of appellant=s conviction took
place at Sherlock=s Pub, a restaurant and bar located in the
Carillon Center shopping strip in Houston.  Each year, Sherlock=s has an annual
St. Patrick=s Day party; on March 16, 2006, Sherlock=s held its 2006
St. Patrick=s Day event.  The night of March 16, 2006, and
continuing into the early morning hours of March 17, 2006, appellant and his
colleagues towed 52 vehicles belonging to patrons of Sherlock=s who had parked
their vehicles in the Carillon Center parking lot (the Acomplainants@).  Appellant
testified that because he had a contract with the Carillon Center to tow
unwanted vehicles, he was under a duty to tow the 52 vehicles.

In contrast, Karen Caldwell, the property manager for the
Carillon Center, testified that (1) there was no contract between the center
and appellant to tow any vehicles from the parking lot and (2) appellant was
not authorized by the center to tow any vehicles.  Additionally, the
complainants uniformly testified that upon entering the Carillon Center and
parking their vehicles in the center=s parking lot, there were no visibly-posted signs
prohibiting parking where they parked their vehicles, yet, when they returned
to their vehicles hours later, tow-notice signs had been posted in the parking
lot.  Apparently, someone had posted the signs after the complainants had
parked their vehicles and had gone inside Sherlock=s.  The
complainants= vehicles were towed to a local storage facility,
where each complainant was required to pay a towing fee.[1] 









Thereafter, an investigation to determine the legality of
appellant=s towing practices revealed that appellant had
possibly illegally towed many other vehicles from other shopping centers,
apartment complexes, and public streets.  These other incidents were similar to
the St. Patrick=s Day event in that the owners of the
vehicles testified that they had parked their vehicles in a location where
parking was not prohibited and that the appellant did not have contracts with
or authority from the property owners to tow the vehicles from the property. 

Appellant was ultimately charged with the felony offense of
aggregate theft over $200,000 for the St. Patrick=s Day incident in
March 2006.  The indictment alleged that appellant:

. . . on or about March 17th
through March 18th, 2006, did then and there unlawfully, pursuant to one scheme
and continuing course of conduct unlawfully acquire or otherwise exercise
control over property, other than real property, namely fifty-two motor
vehicles, automobiles, trucks and/or sports utility vehicles and money, which
property was owned by one or more of the below listed persons, . . . each of
whom had a greater right to possession of the property than the defendant, with
the intent to deprive the complainants of the property by restoring the
property only upon payment of reward or compensation and without the effective
consent of the complainants, namely without consent of any kind and the
aggregate amount and value of the property so stolen was two hundred thousand
dollars or more.    

Appellant pleaded not guilty, and the case was tried to a
Harris County jury.  The jury found appellant guilty of the charged offense and
assessed punishment at 18 years= confinement and a $10,000 fine.  On
appeal, appellant contends that the evidence is legally and factually
insufficient on the element of Aintent to deprive@ the complainants
of their property.  

STANDARDS OF REVIEW








In a legal sufficiency review, we view all the evidence in
the light most favorable to the verdict and determine whether a rational jury
could have found the defendant guilty of all the elements of the offense beyond
a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979); Williams
v. State, 270 S.W.3d 140, 142 (Tex. Crim. App. 2008).  The jury is the
exclusive judge of the credibility of witnesses and of the weight to be given
to their testimony.  Lancon v. State, 253 S.W.3d 699, 707 (Tex. Crim.
App. 2008).  Reconciliation of conflicts in the evidence is within the
exclusive province of the jury.  Cleburn v. State, 138 S.W.3d 542, 544
(Tex. App.CHouston [14th Dist.] 2004, pet. ref=d).   We must
resolve any inconsistencies in the testimony in favor of the verdict.  Curry
v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

In a factual sufficiency review, we review all the evidence
in a neutral light, favoring neither party.  Watson v. State, 204 S.W.3d
404, 414 (Tex. Crim. App. 2006).  We then ask (1) whether the evidence
supporting the conviction, although legally sufficient, is nevertheless so weak
that the jury=s verdict seems clearly wrong and manifestly unjust,
or (2) whether, considering the conflicting evidence, the jury=s verdict is
against the great weight and preponderance of the evidence.  Id. at
414‑15, 417; Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim.
App. 2006).        

SUFFICIENCY OF THE EVIDENCE

Appellant contends that the evidence is legally and
factually insufficient to support his theft conviction because the State failed
to prove that he intended to deprive the complainants of their property.  A
person commits theft if he unlawfully appropriates property with the intent to
deprive the owner of the property.  Tex. Penal Code ' 31.03(a).  ADeprive@ is defined as: 

(A) to withhold property from the owner permanently or for so extended
a period of time that a major portion of the value or enjoyment of the property
is lost to the owner;

(B) to restore property only upon payment of reward or other
compensation; or

(C) to dispose of property in a manner that makes recovery of the
property by the owner unlikely.

Id. ' 31.01(2).    








          Appellant
contends that there is insufficient evidence of his intention to deprive the
complainants of their property as defined in section 31.01 because (1) he moved
the vehicles to a place where they could be found; (2) the complainants were
not permanently deprived of their property; (3) he did not demand money for the
return of the complainants= vehicles; and (4) he believed that he had
valid contracts with and authority from the property owners to tow the
vehicles.  The two former arguments, that appellant moved the vehicles to an
accessible location and the complainants were not permanently deprived of their
property, pertain to subsections (A) and (C) of section 31.01(2).  See id. '' 31.01(2)(A), (C).
However, the State=s case was based exclusively on subsection
(B), intent to deprive by restoring the property only upon payment of reward or
other compensation.  See id. ' 31.01(2)(B). 
Because the State did not seek to prove appellant=s intent to
deprive under subsections (A) or (C), we do not consider appellant=s arguments on
those statutory bases.   

With respect to appellant=s argument that he
did not intend to deprive the complainants of their property because he
believed that he had the authority to tow the vehicles, there is evidence in
the record reflecting otherwise.  At trial, a number of the complainants
testified that appellant exercised control over their vehicles without their
consent.  Of the 52
complainants listed in the indictment, 22 testified for the State at trial. 
The 22 complainants who testified at trial uniformly testified that appellant
towed each of their vehicles without their consent.  They further testified
that there were no visibly-posted signs prohibiting parking where they parked
their vehicles.  The record also reflects that the property owner of the
Carillon Center did not authorize appellant to tow the complainants= vehicles from the property. 
Specifically, Caldwell, the owner=s agent and property manager,
testified that appellant had no contract and no authority to tow vehicles from
its property. 








Appellant
attempts to rebut this evidence by insisting that he towed the vehicles in Agood faith@ and was under the impression that he
had contracts with the property owner and the duty and authority to tow the
vehicles.  According to appellant, his good faith effort defeats the element of
intent to deprive.  As discussed, the State=s evidence, including the testimony
of the complainants and Caldwell, demonstrates appellant=s intent to deprive the complainants
of their property.  After considering appellant=s Agood faith@ argument and the State=s evidence, the jury apparently chose
to believe the State=s witnesses and disbelieve appellant=s witnesses.  Because the jury is the
exclusive judge of witness credibility and the weight to be given to trial
testimony, we cannot re-weigh the evidence in appellant=s favor.  See Lancon, 253 S.W.3d at
707; Cleburn, 138 S.W.3d at 544 (reconciliation of conflicts in the
evidence is within the exclusive province of the jury).  

After
appellant unlawfully exercised control over the complainants= vehicles, he transported the
property to a storage facility.  To recover their property from the storage
facility, the complainants had to pay a towing and storage fee.  Appellant
claims that he did not deprive the complainants of their property because he
did not personally recover the fee.  However, the State introduced evidence
that the storage facility collected a towing fee on behalf of appellant from
each complainant and that the vehicles were not released until the towing fee
was paid.  Cougan Hignight, a wrecker driver, testified that generally wreckers
do not personally collect the fee from the owner of the vehicle.  He testified
that once a wrecker tows a vehicle, it is transported to a storage facility. 
The wrecker leaves the vehicle with the storage facility and submits a tow
slip; the tow slip identifies, among other things, the vehicle, the location to
which the vehicle was towed, and the towing fee.  The storage facility then
stores the vehicle on its lot until the owner of the vehicle claims it and pays
the towing and storage fees.  If the towing fee is not paid, then the property
owner cannot retrieve the vehicle.  After the towing and storage fees have been
paid, the vehicle is restored to the owner and the wrecker collects his towing
fee from the storage facility.  Thus, the fact that appellant himself did not
collect the money from the complainants has no legal significance this case. 
Additionally, the State introduced the receipts and tow slips on each of the 52
towed vehicles reflecting a towing fee paid by complainants to recover their
vehicles.  The complainants also testified at trial that they were required to
pay a towing fee








The record reflects that appellant
intended to unlawfully exercise control over the complainants= vehicles and to hold the property
for compensation.  See Tex. Penal Code ' 31.01(2)(B) (deprive means to restore property only
upon payment of reward or other compensation).  His act of
unlawfully towing the vehicles and transporting them to a storage facility to
exact compensation was clearly an attempt to force complainants to pay money to
him for a fee to which he was not entitled.  From these facts, a rational jury
could infer that appellant intended to deprive complainants of their vehicles
by unlawfully holding the property for compensation.  See id.  Moreover, the evidence supporting this inference is neither so
obviously weak nor so greatly outweighed by contrary proof as to undermine
confidence in the conviction.  We overrule appellant=s first and second issues.

 

We affirm the trial court=s judgment.

 

 

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

.

Panel
consists of Chief Justice Hedges and Justices Guzman and Brown.

Do Not
Publish C Tex. R. App. P. 47.2(b).









[1]  With the exception of one complainant, Jose De Los
Reyes, appellant transported the vehicles to a storage facility.  Steven
Raitano, appellant=s son and employee, released Reyes=s vehicle outside of the storage facility after Steven
Raitano demanded and received $200 from Reyes.