

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00044-CR

QUINCY DWAYNE YARBROUGH, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 242nd District Court
Hale County, Texas
Trial Court No. B19404-1302, Honorable Edward Lee Self, Presiding

May 13, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellant, Quincy Dwayne Yarbrough, appeals his conviction for tampering with physical evidence. Through a single issue, he contends that the evidence is insufficient to support the conviction. We reverse.

### Background

Officer Dustin Waters, with the Plainview Police Department, was working the night shift when he received a radio dispatch directing him to follow a vehicle driven by appellant. The report allegedly came from another officer who purportedly saw what he

described as a "hand-off" or drug transaction. Waters encountered appellant's vehicle and began to follow it. While doing so, he noticed that the license plate light was non-functioning, decided to conduct a traffic stop, and activated his emergency lights. Appellant pulled over.

Upon approaching the detained vehicle and looking into the driver's side window, Waters observed "some green leafy crumbs . . . on [appellant's] shirt and in his lap." That led him to ask appellant to step out of the car. Appellant then was arrested for possessing marijuana, escorted to Water's squad car, and placed in the back seat. While in the back seat, appellant began "playing with his mouth a little bit with his tongue," according to Waters. At that point, Waters directed appellant to open his mouth. When appellant complied, the officer "observed a green leafy substance chewed up in his mouth, in his teeth, and in the back of his throat" and opined that it appeared to be marijuana. When asked what was in his mouth, appellant said he was eating a hamburger and chewing on lettuce.

The officer tried to collect and preserve the "crumbs" from appellant's shirt. However, he did not acquire or preserve any of the substance seen in appellant's mouth. When asked why, he said: "[b]ecause I didn't want to stick my hand in there, I guess. . . I wasn't going to do it." This led him to being asked at trial: "[d]id you not think it was important to take, maybe, that evidence that you thought might be evidence out of his mouth?" Water answered by stating that: "[y]eah, it probably would have been important." So too did the officer admit that all green leafy substances are "not always" marijuana. The officer also acknowledged that he did not know if appellant actually swallowed any marijuana, that he could have collected samples of the substance in

appellant's mouth, that he could not have collected samples of what was swallowed, and that "the marijuana that he would have been able to ingest already" would have been "destroyed" even though he did not know if any was ingested.

The only other witness for the State, Officer Abalos, testified that he responded as back up to Officer Waters, approached appellant's vehicle, observed appellant open his mouth for Waters, also saw a green, leafy substance in appellant's mouth, and believed the substance to be marijuana. When asked if he was familiar (due to his experience) with the appearance and smell of marijuana, Abalos replied in the affirmative. Abalos also described his search around the area. During that search, he located marijuana between his squad car and that of Waters. He did not testify about how the marijuana came to be there, though he did admit that he did not see appellant "throw" it there.[1] Like Waters, Abalos also opted to forego collecting, removing or testing any of the substance seen in appellant's mouth. So too did he acknowledge that it would have been "important" to remove and test the substance and that he did not know why that was not done.

In turn, appellant testified at trial and said that 1) on the day of the arrest, he had been with friends grilling hamburgers, 2) he left around 10:00 p.m., 3) the substance found on his clothes was marijuana, 4) he did not "eat" any marijuana, 5) the marijuana on his clothes came from him smoking marijuana sometime earlier, 6) he did not throw any marijuana out of the vehicle, 7) he had eaten a hamburger with lettuce on it, 8) the leafy substance in his mouth was lettuce, and 9) he had a prior felony conviction for marijuana.

---

[1] Indeed, no State's witness testified about seeing appellant throw anything away. Nor does the record indicate that appellant walked behind Officer Waters' patrol car or had occasion to be within the vicinity of where Officer Abalos found the marijuana.

3

At trial, the jury was asked to determine whether appellant "knowing that an offense had been committed, to wit: possession of marihuana, did intentionally or knowingly destroy a suspected controlled substance, to wit: marihuana, with the intent to impair its availability as evidence in any subsequent investigation or official proceeding related to the offense . . . ." It found that he did.

### *Authority*

Appellant contends that the evidence is insufficient to support his conviction because no evidence illustrates that he destroyed anything or that the thing he destroyed was marijuana. We sustain the issue.

The applicable standard of review is most recently described in *Murray v. State*, No. PD-1230-14, 2015 Tex. Crim. App. LEXIS 391 (Tex. Crim. App. April 15, 2015). Under it, we must decide "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* at *3-4, *quoting, Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (emphasis in original). The standard burdens "the factfinder with resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts." *Id.* And, the reviewing court must decide if "'the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.'" *Id.* at *4.

Next, § 37.09 (d) of the Texas Penal Code states that: "[a] person commits an offense if the person . . . [while] knowing that an offense has been committed, alters, destroys, or conceals any record, document, or thing with intent to impair its verity,

4

legibility, or availability as evidence in any subsequent investigation of or official proceeding related to the offense." TEX. PENAL CODE ANN. § 37.09(d) (West Supp. 2014). Furthermore, a thing is "'destroyed,'" according to our Court of Criminal Appeals, "when 'ruined or rendered useless,' rather than when its evidentiary value is lost or diminished." *Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014), *quoting, Williams v. State*, 270 S.W.3d 140, 145-46 (Tex. Crim. App. 2008). It is destroyed "when it has lost its identity and is no longer recognizable." *Williams v. State*, 270 S.W.3d at 146.

Here, appellant was accused of and tried for "destroy[ing]" a "thing." The thing in question was "a suspected controlled substance, to wit, marijuana. . . ." Arguably, the marijuana alluded to could be that allegedly seen in appellant's mouth. Yet, that the officers 1) testified to seeing it in appellant's mouth, 2) described it as a green leafy substance, 3) concluded it was marijuana, and 4) acknowledged that they had the ability to collect or remove it from appellant's mouth is testimony establishing that the substance was quite identifiable.

To reiterate the words of the Court of Criminal Appeals in *Williams*, a thing is destroyed when it has lost its identity and is no longer recognizable. *Id.* The supposed marijuana in appellant's mouth did not lose its identity; nor was it unrecognizable. So, its presence in appellant's mouth and appellant's alleged effort to chew it is not some evidence upon which a rational factfinder could infer destruction, as alleged in the indictment, incorporated into the jury charge, and required by statute.

That the substance in appellant's mouth could have been collected and analyzed also creates another obstacle to conviction. Again, the "thing" appellant was accused of

5

destroying was marijuana.  Yet, as admitted by the police officer, .14 ounces of marijuana was recovered from appellant.[2]  It consisted of the crumbs taken from his shirt and the two "buds" found on the street.[3]  The officer also acknowledged that the quantum was "enough to charge somebody with possession of marijuana under two ounces."  To that quantum, the police could have added the substance found in appellant's mouth had they opted to gather it.  So, in effect, what we have here is the State disproving an element of the offense.  That is, it proved that the thing allegedly destroyed (*i.e.*, marijuana) was not destroyed.

To the extent that the State suggests the destroyed "controlled substance" alluded to in both the indictment and jury charge consisted of what appellant allegedly swallowed, we find the argument lacking as well.  Officer Waters did testify that the portion of the substance appellant swallowed was "destroyed."  Assuming *arguendo* that appellant swallowed some of whatever was in his mouth,[4] none of the officers testified that they had any expertise in biology, the medical field, or any other field which would have rendered them capable of testifying, in any legally probative manner, that the fluids or acids or anything else found in a human gastrointestinal tract would have ruined or made useless whatever may have been swallowed.  Nor did any other witness, expert or not, so testify.  Simply put, the officer's comment about the substance being "destroyed" when swallowed was and is a mere naked and unsupported conclusion; as

---

[2] Whether the crumbs on appellant's shirt and marijuana found in the street was actually marijuana is conjecture.  There is no evidence of record indicating that the substance was subjected to testing.

[3] Though the officer attributed to appellant the marijuana found on the street behind Water's patrol car, he failed to explain how and when appellant placed it there.

[4] Officer Waters said "I don't know if he was able to swallow any" when asked if appellant was able to swallow any crumbs found in his mouth.

such, it has no probative value. *See Natural Gas Pipeline Co. v. Justiss*, 397 S.W.3d 150, 157 (Tex. 2012) (recognizing that opinion testimony that is conclusory or speculative is not relevant evidence since it does not tend to make the existence of a material fact more or less probable); *Dallas Railway Terminal Co. v. Gossett*, 294 S.W.2d 377, 380-81 (Tex. 1956) (stating that "the naked and unsupported opinion or conclusion of a witness does not constitute evidence of probative force and will not support a jury finding even when admitted without objection").

Also deficient is the testimony by one officer that *he* could not collect the matter from appellant's stomach. While he may not have had the ability to do so, there is no evidence that others (such as medical personnel) would have been unable to do so. Indeed, the police often take suspects to a local hospital to capture evidence of criminality. One need only think of blood draws taken from an individual suspected of driving while under the influence of intoxicants to realize this. If an officer's inability to personally seize or secure the evidence in question is proof of "destruction," then it can be argued that one has destroyed the alcohol found in the bloodstream because the officer cannot personally capture it. More importantly, the latter supposition would be ridiculous. In other words, the inability of a policeman alone to collect some bit of evidence is not alone proof that the evidence has been ruined or rendered useless under the scenario before us.

As for the argument that the jury could have "rationally inferred from the circumstances that even if the marijuana survived the digestive processes of Appellant's body, it would have passed through the bowels of the Appellant, causing it to be destroyed because it would be unsanitary and unusable," it too is lacking. Admittedly, a

7

person may not care to touch something that passed through one's bowel and anus. Yet, that does not mean the content of the excreted substance is beyond analysis. Without accompanying testimony, such as that discussing the effect gastric activity would have on what appellant may have eaten, the hypothesis that rendering a matter "unsanitary" somehow rendered it useless or ruined is conclusory and speculative. Indeed, we can readily think of instances where infants, children, or adults have swallowed objects only to have them pass through their gastric system intact. In those instances, the object may have been "unsanitary" when it exited the body, but it often remained quite identifiable. Whether the substance appellant supposedly swallowed would have remained identifiable is an exercise in conjecture. Whether it would have been unidentifiable or rendered useless is also conjecture, given the record before us. But, in either situation, we cannot say that eschewing the desire to touch it because of where it had been is evidence that it is ruined or useless.

In sum, no probative evidence appears of record upon which rational minds could conclude or infer that appellant "did intentionally or knowingly destroy a suspected controlled substance . . . ." Yet, our task has not ended.

According to *Rabb,* we are now required to decide if acquittal is appropriate or whether the judgment may be reformed to encompass a conviction on a lesser offense included within the scope of the offense charged. *Rabb v. State*, 434 S.W.3d at 618. Undertaking that analysis obligates us to address two questions. As explained in *Thornton v. State*, 425 S.W.3d 289 (Tex. Crim. App. 2014):

> [A]fter a court of appeals has found the evidence insufficient to support an appellant's conviction for a greater-inclusive offense, in deciding whether to reform the judgment to reflect a conviction for a lesser-included offense, that court must answer two questions: 1) in the

8

course of convicting the appellant of the greater offense, must the jury have necessarily found every element necessary to convict the appellant for the lesser-included offense; and 2) conducting an evidentiary sufficiency analysis as though the appellant had been convicted of the lesser-included offense at trial, is there sufficient evidence to support a conviction for that offense? If the answer to either of these questions is no, the court of appeals is not authorized to reform the judgment. But if the answers to both are yes, the court is authorized--indeed required--to avoid the "unjust" result of an outright acquittal by reforming the judgment to reflect a conviction for the lesser-included offense.

*Id.* at 299-300. Both parties have briefed the issue and focused on the crime of attempt.

According to statute, a person "commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." TEX. PENAL CODE ANN. § 15.01(a) (West 2011). The supposed offense appellant intended to commit here was that described above and involved the destruction of a thing 1) while knowing that an offense has been committed and 2) with intent to impair its verity, legibility, or availability as evidence in any subsequent investigation. It seems rather arguable that an attempt to commit an offense under § 37.09(d) of the Penal Code can be a lesser-included offense. Nonetheless, upon reviewing the record at bar, we found no evidence that appellant tried to destroy the thing placed in his mouth with the intent to impair its verity, legibility, or availability as evidence in any subsequent investigation.

Admittedly, appellant had something in his mouth. Whether it was placed there in effort to prevent its use in a subsequent investigation, however, is unknown. The officers said nothing about when appellant first tried to eat the substance. Nor does the record fill the void. Nor did the officers describe appellant engaging in some gesture indicative of trying to destroy something upon first encountering him. It may be that he

9

saw the officers and then began chewing.  It may be that he ate the substance before he became aware of the officer's presence.  It may be that the substance in his mouth was marijuana.  It may be that it was lettuce, as appellant so testified.  Yet, when it was placed in his mouth and what it actually was are topics about which we can only guess in view of the deficient record at bar.  And, without this or like information, an officer merely finding the substance in appellant's mouth does not permit a factfinder to reasonably infer that it was placed there in effort to impair its availability in a subsequent investigation.

Again, the crime of attempt requires proof of a specific intent to commit an offense, the offense here being a violation of § 37.09(d) of the Penal Code.  If appellant did not ingest or attempt to ingest the substance with the intent to render it unavailable in a subsequent investigation, he did not attempt to violate § 37.09(d).  Since there is no evidence that he ingested the substance for that reason, we cannot say that the record contains evidence establishing the crime of attempt to violate § 37.09(d).  In short, we cannot answer "yes" to both questions posed in *Thornton* and are barred from reforming the judgment.

Accordingly, we reverse the trial court's judgment of conviction and render a judgment acquitting appellant.

Brian Quinn
Chief Justice


Do not publish.

10