

# NUMBER 13-16-00394-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

THOMAS SANTELLANA JR.,                                    Appellant,

v.

THE STATE OF TEXAS,                                      Appellee.

**On appeal from the 207th District Court
of Comal County, Texas.**

# MEMORANDUM OPINION
**Before Justices Benavides, Longoria, and Hinojosa
Memorandum Opinion by Justice Benavides**

By two issues, appellant Thomas Santellana, Jr. challenges his convictions for forgery and tampering with physical evidence. *See* TEX. PENAL CODE ANN. §§ 32.21 (forgery), 37.09 (tampering with physical evidence) (West, Westlaw through 2017 1st C.S.). Santellana alleges the evidence was insufficient to support a conviction for forgery (count five) and tampering with physical evidence (count seven). We affirm.

# I.   BACKGROUND[1]

The State charged Santellana by a seven-count indictment with: (1) one count of possession of a controlled substance, penalty group 1, more than 1 gram but less than 4 grams, *see* TEX. HEALTH & SAFETY CODE § 481.115(c) (West, Westlaw through 2017 1st C.S.); (2) four separate counts of forgery; (3) one count of theft of property, more than $20,000 but less than $100,000, *see* TEX. PENAL CODE ANN. § 31.03 (West, Westlaw through 2017 1st C.S.); and (4) one count of tampering with physical evidence, all third–degree felonies.

The events surrounding Santellana's convictions occurred in and around the New Braunfels area in March 2014. New Braunfels police and the Comal County Sheriff's Office were both notified regarding counterfeit currency that was being used at local businesses. Comal County Sheriff's Office Investigator Richard Smith testified that he was involved in the financial crimes unit and was a certified fraud investigator. Investigator Smith was called out to Buc-ee's gas station in March 2014 regarding an incident involving what was believed to be counterfeit currency. Raven Perez, the cashier at Buc-ee's, testified that she made contact with Kristi Brandt, who attempted to pay using cash. Perez testified that the money did not feel real, but when she stated she needed to call her team leader, Brandt said "it was the wrong money" and took the money back and left. Perez said Brandt entered a black BMW vehicle, driven by Santellana. Investigator Smith reviewed the Buc-ee's surveillance videos, identified the individuals Perez had contact

---

[1] Pursuant to a docket-equalization order issued by the Supreme Court of Texas, this appeal was transferred to this Court from the Third Court of Appeals in Austin. *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2017 1st C.S.).

with, identified the BMW Perez observed, and was able to run the BMW's license plates. Investigator Smith determined the license plates were registered instead to a Jeep.[2]

Around the same time, New Braunfels police were called out to a local Walgreens regarding an attempt by a customer to use counterfeit currency. Terry Ferree, the night manager at Walgreens, testified that Santellana and another man were in his store looking at cellular phones. Santellana purchased a cellular phone, paid for it with seven twenty dollar bills, and left. The other man with Santellana tipped Ferree off regarding the money being counterfeit, and Ferree called the police. Ferree was able to identify the currency used by Santellana because it was the last transaction on his cash register. When New Braunfels police arrived and examined the money, they discovered two of the twenty dollar bills used by Santelllana had the exact same serial number.

New Braunfels Police Detective Clint Penniman was assigned to the financial crimes unit in 2014 and was contacted by the Comal County Sheriff's Office regarding the attempted transfer of counterfeit currency at Buc-ee's. Detective Penniman testified that he saw the Buc-ee's video and attempted to locate the black BMW in the New Braunfels area. Detective Penniman testified that he located the BMW at the Red Roof Inn hotel in New Braunfels, but when he spoke to the manager, the vehicle was not registered to a specific room. Detective Penniman said he then began surveillance of the vehicle.

Manish Patel was the general manager and owner of the Red Roof Inn and after speaking to Detective Penniman, he began reviewing his computerized system for currency. Patel stated that cash was the last transaction taken and consisted of two twenty dollar bills and one ten dollar bill. Patel realized that the twenty dollar bills appeared to be

---

[2] Officers determined the BMW had been stolen from its owner, Valerie Bryce. State Farm auto adjuster Omar Castaneda testified regarding the theft claim and valued the vehicle at $18,919.73.

counterfeit currency and called the police. Patel testified that Santellana and Brandt were the only cash transactions at the hotel, and he turned over his video surveillance of the front desk to police.

When other officers from the police department arrived, Detective Penniman stayed with Patel to review the surveillance footage, while the three other police officers approached Room 303, based on Patel's identification of the room number. When Santellana opened the door, he was asked to exit the room and was detained by the officers. Detective Penniman testified that Santellana identified himself as Gerry Santellana, which was later determined to be an alias. Detective Penniman testified that Santellana consented to a search of the hotel room.

During the search, two hypodermic needles were found, one in the bathroom on top of the toilet tank and one in a duffle bag, as well as a small envelope of a substance, later determined to be methamphetamine, the keys to the BMW, and a men's shirt similar to the one seen in the Buc-ee's video. Officers then requested consent to search the BMW and Santellana agreed. The search of the BMW turned up another hypodermic needle and a counterfeit twenty dollar bill in the passenger door pocket.

While officers were searching the vehicle, Santellana asked to use the restroom and change clothes. Officer Sabreda observed Santellana moving a pile of clothes that had been on the toilet tank. Later, officers determined that the hypodermic needle, which had been seen on the top of the toilet tank, was missing.

Officer Sabedra was tasked with transporting Santellana to the New Braunfels Police Department. He stated that as he tried to unlock his patrol car door, Santellana jerked hard away from him, got loose, and took off running. Officer Sabedra testified he

followed in pursuit, as well as Detective Groff and others. Santellana ran to a business complex, was seen entering and exiting a truck cab, and jumped or fell into a drainage ditch. Detective Groff was able to subdue Santellana in the drainage ditch and he was recaptured. Detective Groff testified that after Santellana was back in custody, he noticed a hypodermic needle in the alley near where Santellana was detained that was similar to the other needles collected in Santellana's hotel room.

Detective Penniman explained that he believed the currency collected from the Red Roof Inn, Walgreens, and the BMW was counterfeit because the color was off, the texture of the paper was too heavy, the watermarks were missing, and multiple bills had the exact same serial numbers, which would never occur in real United States currency. Detective Penniman also spoke to Brandt, Santellana's co-defendant. He stated that Brandt admitted to passing fake currency they had received from a man named "Austin", Santellana made her use the counterfeit currency, they both passed the currency knowing it was fake, and additional counterfeit bills were found at places Brandt said they had been to.

The jury found Santellana guilty on counts one, two, four, five, and seven. They found Santellana guilty of a lesser included offense on count six[3] and not guilty on count three. Santellana pleaded true to two enhancement paragraphs in the indictment for prior felony offenses, which allowed punishment as a habitual offender, increasing the penalty range for each felony offense to twenty-five years' imprisonment to ninety-nine years or life imprisonment. *See* TEX. PENAL CODE ANN. § 12.42(d) (West, Westlaw through 2017

---

[3] The lesser included offense of theft is a state jail felony, which was enhanced by Santellana's plea of true to a second-degree felony. *See* TEX. PENAL CODE ANN. § 12.42, 31.03 (West, Westlaw through 2017 1st C.S.).

1st C.S.).  The trial court sentenced Santellana to fifty years' imprisonment on counts one, two, four, five and seven, and to twenty years' imprisonment on count six in the Texas Department of Criminal Justice–Institutional Division.  This appeal followed.

## II.    EVIDENCE WAS LEGALLY SUFFICIENT

By his first and second issue, which we will address as one, Santellana alleges that the evidence supporting count five and count seven of the indictment was not factually sufficient.

### A.    Standard of Review

The "*Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt."  *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.); *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  *Brooks* overruled the *Clewis v. State* factually sufficiency analysis in 2010.  *See Brooks*, 323 S.W.3d at 895.  Therefore, we will address Santellana's factual sufficiency challenge under the legal sufficiency standard used in Texas today.  *See id.*

When evaluating a sufficiency challenge, the reviewing court views the evidence in the light most favorable to the verdict to determine whether a rational jury could find the defendant guilty beyond a reasonable doubt.  *Brooks*, 323 S.W.3d at 899; *see Jackson*, 443 U.S. at 319.  In order to have reversal of a conviction on a claim of insufficiency of the evidence, Santellana must show that no rational jury could have found all the elements of the offense beyond a reasonable doubt.  *See Brooks*, 323 S.W.3d at 902.  The jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimony,

and a reviewing court is not to substitute its judgment as to facts for that of the jury as shown through its verdict. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). When the reviewing court is faced with a record supporting contradicting inferences, the court must presume that the jury resolved any such conflict in favor of the verdict, even if it is not explicitly stated in the record. *Id.*

A reviewing court must measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (en banc)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.*

**B.     Applicable Law and Discussion**

**1.     Count Five (Forgery)**

A person commits an offense of forgery if he: (a) forges a writing with intent to defraud or harm another, and (b) the writing is or purports to be part of an issue of money. *See* TEX. PENAL CODE ANN. § 32.21(b), (e)(1). "Forge" means to: (A) to alter, make, complete, execute, or authenticate any writing so that it purports (iii) to be a copy of an original when no such original existed; (B) to issue, transfer, register the transfer of, pass, publish, or otherwise utter a writing that is forged within the meaning of Paragraph (A); or (C) to possess a writing that is forged within the meaning of Paragraph (A) with the intent to utter it in a manner specified in Paragraph (B). *Id.*(a)(1)(A), (B), (C). "Writing" includes: (B) money, coins, tokens, stamps, seals, credit cards, badges, and trademarks. *Id.*(a)(2).

"Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015). "The trier of the fact is the exclusive judge of the credibility and the weight of the evidence and is permitted to draw any reasonable inference from the evidence so long as it is supported by the record. Inferences based on mere speculation, however, are insufficient to support a criminal conviction." *Id.*

Santellana alleges that there was insufficient evidence to tie him to the handling of the counterfeit currency at the Red Roof Inn. He claims Patel was unsure of when exactly the counterfeit currency was received and therefore, we should render an acquittal on count five. However, circumstantial evidence can be considered when determining sufficiency. *See Ramsey*, 473 S.W.3d at 809. Patel testified that the Red Roof Inn had a computerized system that documented received cash at the hotel front desk. Patel also stated that cash was used in the last transaction during the shift in question, there were no other cash transactions during that shift, and based on the surveillance video provided by Patel, Brandt and Santellana were the last persons who checked into the Red Roof Inn during the shift in question. From the surveillance video, cash was used in the transaction and it is clear that Brandt and Santellana are checking into the hotel together. Patel also testified that when he recovered the cash from the "till", the twenty dollar bills appeared to be fraudulent, and he contacted police. Based on the facts presented to the jury, a rational jury could have found all the elements of forgery beyond a reasonable doubt. *See Brooks*, 323 S.W.3d at 902. We overrule Santellana's first issue.

## 2. Count Seven (Tampering with Physical Evidence)

A person commits the offense of tampering with physical evidence if: (a) knowing that an investigation or official proceeding is pending or in progress, he: (1) alters, destroys, or conceals any thing (2) with the intent to impair its availability as evidence in the investigation or official proceeding. TEX. PENAL CODE ANN. § 37.09(a)(1); *see Williams v. State*, 270 S.W.3d 140, 142 (Tex. Crim. App. 2008). The court of criminal appeals has also stated:

> The three elements of section 37.09(a)(1) include 'two different culpable mental states'—knowledge and intent. The statute requires the knowledge of an investigation and the intent to impair a thing's availability as evidence. As defined by the Texas Penal Code, a 'person acts knowingly, or with knowledge, with respect . . . to circumstances surrounding his conduct when he is aware . . . that the circumstances exist.' In contrast, a 'person acts intentionally, or with intent, with respect . . . to a result of his conduct when it is his conscious objective or desire to . . . cause the result.'

*Id.* at 142–43 (quoting *Stewart v. State*, 240 S.W.3d 872, 874 (Tex. Crim. App. 2007), and TEX. PENAL CODE ANN. § 6.03(a), (b) (West, Westlaw through 2017 1st C.S.)).

"When contraband is not in the exclusive possession of the defendant, a fact finder may nonetheless infer that the defendant intentionally or knowingly possessed the contraband if there are sufficient independent facts and circumstances justifying such an inference." *Tate v. State*, 500 S.W.3d 410, 413–14 (Tex. Crim. App. 2016).

Here, multiple police officers testified that a hypodermic needle had been found on the tank of the toilet in the restroom when they first searched Santellana's hotel room. Officer Sabedra testified that Santellana had asked to use the restroom and was allowed to do so without being handcuffed. Officer Sabedra also testified that Santellana had asked to change clothes, and was observed moving a pile of clothing in the restroom. After Santellana was re-captured, Officer Groff noticed the hypodermic needle in the

9

alleyway near the business complex, stated it looked like the other needles collected, and the only needle he saw in the alleyway was within five to ten feet of where Santellana had been. Other officers testified that they noticed later that the hypodermic needle was no longer in the restroom where it had initially been seen.

Santellana was aware an investigation was ongoing and that officers had found hypodermic needles and methamphetamine in his hotel room. It can be inferred that when Santellana asked to change clothes and moved the pile of clothing in the restroom, that he deliberately moved the hypodermic needle. Additionally, due to the fact a needle was found within feet of where Santellana was running and finally arrested, it can be inferred that it was his intent to cause the hypodermic needle to be unavailable as evidence in the investigation. *See id.* Based on the facts presented to the jury, a rational jury could have found all the elements that Santellana moved the hypodermic needle intending to impair the investigation. *See Brooks*, 323 S.W.3d at 902. We overrule Santellana's second issue.

## III. CONCLUSION

We affirm the judgment of the trial court.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
16th day of November, 2017.