

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---
### NO. PD-0307-21
---

**SHOLOMO DAVID, Appellant**

**v.**

**THE STATE OF TEXAS**

---
### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE EIGHTH COURT OF APPEALS
### EL PASO COUNTY
---

**HERVEY, J., delivered the opinion of the Court in which RICHARDSON, NEWELL, KEEL, WALKER, and SLAUGHTER, JJ., joined. KELLER, P.J., and YEARY and MCCLURE, JJ., concurred.**

### O P I N I O N

Sholomo David, Appellant, was indicted for felony tampering with physical evidence, a third-degree felony. The State's theories were that Appellant "altered," "concealed," or "destroyed" marijuana when he dumped it into a toilet containing water

and human waste during a police raid of the motel room he was in.[1] The jury convicted Appellant and sentenced him to 30 years' confinement as a habitual offender. Appellant appealed and argued among other things that the evidence is legally insufficient to show that he put the marijuana in the toilet and to prove that putting the marijuana into the toilet with water and human waste altered, concealed, or destroyed it. The court of appeals found the evidence legally insufficient and rendered an acquittal. We granted review to decide whether the evidence is sufficient to show that Appellant altered or destroyed the marijuana. Because we conclude that the evidence is legally sufficient to show that Appellant altered the marijuana, we will reverse the judgment of the court of appeals and remand the cause for it to address Appellant's remaining issues.

---

[1] Section 37.09(a) states, as relevant to this offense, that,

> (a) A person commits an offense if, knowing that an investigation or official proceeding is pending or in progress, he:
>
> > (1) alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding; . . .
>
> *      *      *

TEX. PENAL CODE § 37.09.

**FACTS**

### a. Background

In June 2016, Special Agent Gabriel Nava, a member of the gang/organized crime unit of the Criminal Investigations Division of the Texas Department of Public Safety, was coordinating surveillance at the Studio and Rooms motel complex in El Paso because he believed that drugs were being sold there. The motel was associated with drug dealing, mostly crack cocaine and methamphetamine, as well as human trafficking by gang members. There had also been multiple assaults related to the illegal activities and a stabbing not long before this incident.

### b. The Day Before the Raid

The day before the raid, June 8, 2016, a criminal informant told police that drugs were being sold in Room 15, so police set up a controlled buy. The undercover officer went to Room 12, and a female answered the door. The female then went to Room 15, obtained crack cocaine, returned to Room 12, and sold the drugs to the officer. Police obtained search warrants for both rooms with plans to execute the search warrants the following day.

### c. The Day of the Raid

The following day, June 9, 2016, police surveilled the motel before executing the search warrants, and they saw that the drug activity had shifted to Room 18. Lt. Nava (then Special Agent Nava), who oversaw the operation, testified that he saw many brief, hand-to-hand transactions, which in his experience, "tend to be quick street level deals that are happening for narcotics." In particular, he saw a female leave Room 18 numerous

times on foot to conduct hand-to-hand transactions with other people who approached on foot. Another agent saw a male leave Room 18, walk across the street (where the agent was parked), produce a glass pipe, and begin smoking a "white rock-like substance." Because the drug activity had moved to Room 18, Lt. Nava decided that the agents needed to regroup. They assigned a team of officers to execute the search warrant at Room 15 and for a team of officers to do a "knock and talk" at Room 18.[2] Police did not execute the search warrant for Room 12 at that time because they had insufficient personnel. Police then arrived in force, some in a marked car wearing gear identifying themselves as state police. As they were arriving, a woman approaching Room 18 saw them. She went to the open doorway of Room 18 and yelled something to the occupants, but Lt. Nava could not hear what she said. The woman then stepped away from the door and sat on the curb. As police approached the motel rooms announcing their presence and ordering the occupants to show themselves, someone inside Room 18 slammed that door shut. When Lt. Nava reached the door, he smelled the strong odor of marijuana and could hear "a bunch of movements." According to him, it was "obviously more than one person -- quick movement." He told other agents behind him to keep knocking and try to contact the occupants while he proceeded to Room 15, his assignment, to execute the no-knock search warrant.

While Lt. Nava was executing the warrant, Special Agent Michael Carrasco had continued directly to Room 18 and started knocking on the window. Other officers were

---

[2] A "knock and talk" is where police knock on a door, hoping the occupants will answer and cooperate.

already knocking on the door. Agent Carrasco could not see anything through the window but heard the voices of multiple people and a lot of commotion inside the room, "[l]ike shuffling of whatever they had inside -- their clothes or other things. You could hear like a drawer trying to close."

Lt. Nava and Agent Carrasco breached Room 18 together. According to Lt. Nava, the room was a mess, with clothing everywhere, "like they had been staying an extended amount of time." "The room had a very, very strong odor of marijuana," and in plain view there were "cigarette-type Swisher Sweets or Phillies or other types of things like that, they tend to roll marijuana in . . . ." Agent Carrasco said that the odor of marijuana "hit [him] like a rock." There was paraphernalia all over the room, including a glass pipe commonly used to smoke either crack cocaine or methamphetamine. In a drawer were found a realistic-looking pistol BB gun and four cell phones. According to Lt. Nava, it is typical for narcotics dealers to have multiple cell phones.

There were two females in the immediate living area, and Lt. Nava and Agent Carrasco heard someone in the bathroom. Agent Carrasco said that he was knocking on the door and announcing himself as a police officer while ordering Appellant out, but Appellant did not answer. Instead, Agent Carrasco started hearing "shuffling of stuff -- feet shuffling and movement." At that point, Agent Carrasco tried to enter, but the door was locked, so the team breached the door and found Appellant alone, completely clothed, and standing in a one-to-two-foot space between the toilet and shower. Appellant never said anything to police.

In searching the bathroom, Lt. Nava found a loose green leafy substance in the toilet. It had been mixed with water and excrement. He also saw some smaller glass pipes at the bottom of the toilet. Lt. Nava believed that narcotics had been flushed prior to them breaching the door and that they found only the remnants of what did not flush. A photograph of the substance introduced by the State appears to show that some of the substance is still burning. Lt. Nava said that they did not collect the loose marijuana because it was only a usable amount that was mixed with water and human waste.[3] Lt. Nava agreed with defense counsel that, had they collected the marijuana, it might have been able to be tested. Agents arrested all the occupants for tampering with physical evidence.

## PROCEDURAL HISTORY

The State indicted Appellant for tampering with physical evidence, a third-degree felony. TEX. PENAL CODE § 37.09(a)(1). A jury found Appellant guilty. At punishment, the State alleged and Appellant stipulated that he had previously been convicted of 11 prior felonies.[4] Appellant was subject to between 25 years to life confinement as a habitual offender. *Id.* § 12.42(d). The jury sentenced him to 30 years' confinement. He

---

[3] Lt. Nava testified that the main goal of his team "was to disrupt and dismantle organized criminal enterprises that were here operating within the El Paso area."

[4] Those offenses spanned multiple states and included harassment of a public servant, assault of a public servant, escape, criminal restraint, terroristic threats, assault, felon in possession of a firearm, and escape from a federal institution.

filed two motions for new trial,[5] and the trial court held three evidentiary hearings. The motions were eventually overruled by operation of law.

On appeal, Appellant raised four points of error, including that the evidence is legally insufficient. *David v. State*, 621 S.W.3d 920, 922 (Tex. App.—El Paso 2021). A split panel of the El Paso Court of Appeals agreed and further held that Appellant's conviction could not be reformed to reflect that he was convicted of the lesser-included offense of attempted tampering with physical evidence. *Id.* at 928, n.1. The court of appeals did not reach Appellant's challenge to the sufficiency of other elements of the offense or his other points of error. *Id.* The State then filed a petition for discretionary review, which we granted, arguing that the court of appeals erred because the evidence is legally sufficient to show that Appellant altered or destroyed the marijuana and that, even if the evidence is insufficient, the court of appeals erred in holding that Appellant's conviction could not be reformed.

## LEGAL SUFFICIENCY

### a. Law

A criminal conviction cannot stand unless it is supported by legally sufficient evidence. *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). Evidence supporting a conviction is legally sufficient if a rational trier of fact could have found each element of the offense beyond a reasonable doubt. *Id.* (citing *In re Winship*, 397 US. 358, 364

---

[5] Trial counsel filed the first motion for new trial and argued that Appellant was entitled to a new trial in the interest of justice. Appellate counsel was then appointed and filed an amended motion for new trial raising substantive claims, including ineffective assistance of trial counsel.

(1970)) The trier of fact is the exclusive judge of the credibility and weight of the evidence and is allowed to draw any reasonable inference from the evidence so long as it is supported by the record. *Id.* at 319. When reviewing the evidence, we consider the combined and cumulative force of all the admitted evidence in the light most favorable to the verdict. *Id.*; *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction. *Jackson*, 443 U.S. at 324–25; *Winfrey v. State*, 393 S.W.3d 763, 771 (Tex. Crim. App. 2013). The evidence need not negate every conceivable alternative to a defendant's guilt to be sufficient, *Geesa v. State*, 820 S.W.2d 154, 160–61 (Tex. Crim. App. 1991), and a conviction will be upheld if the evidence is sufficient under any theory authorized in the charge. *Anderson v. State*, 416 S.W.3d 884, 889 (Tex. Crim. App. 2013) (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)).

### b. Hypothetically Correct Jury Charge

To determine whether the evidence is legally sufficient, we compare the evidence produced at trial to "the essential elements of the offense as defined by the hypothetically correct jury charge." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* The "law as authorized by the indictment" includes

the statutory elements of the offense and those elements as modified by the indictment.

*Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

## TAMPERING WITH PHYSICAL EVIDENCE

Section 37.09(a) states, relevant to this offense, that,

(a) A person commits an offense if, knowing that an investigation or official proceeding is pending or in progress, he:

(1) alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding; . . .

\* \* \*

TEX. PENAL CODE § 37.09(a)(1).

## ANALYSIS

### a. "Alteration"

The indictment alleged that Appellant "did then and there knowing that an investigation or official proceeding is pending or in progress alter, destroy, or conceal a thing, to wit: drugs, with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding." Therefore, the hypothetically correct jury charge required the State to prove that (1) Appellant, (2) knew that an investigation or official proceeding was pending or in progress and that he (3) altered, destroyed, or concealed, (4) drugs, (5) with intent to impair their verity, legibility, or availability as evidence in the investigation or official proceeding. While the State argued at trial that Appellant's actions altered, concealed, and destroyed the marijuana, the only two theories of liability presented to this Court for review are whether Appellant altered or destroyed

the marijuana. Because we conclude that the evidence is legally sufficient to show that Appellant altered the marijuana, we do not address the sufficiency of the evidence to prove destruction.

> i. The court of appeals erred in requiring proof of a change in chemical composition of marijuana to show that it was altered.

The court of appeals held that the proof of "alteration" is insufficient because there is no evidence about whether mixing loose marijuana with water and human waste changed the chemical structure of the marijuana. *David*, 621 S.W.3d at 928. It appears that the court of appeals' conclusion was based on this Court's decision in *Stahmann v. State*, 602 S.W.3d 573 (Tex. Crim. App. 2020). In that case, the State alleged that Stahmann altered a pill bottle by moving it when he threw it over a fence after he was involved in a car accident. *Id.* at 578. In our analysis in that case, we noted that, "when a defendant is alleged to have altered a physical thing," "'alter' means that the defendant changed or modified the thing itself . . . ." *Id.* at 579. We never said, however, that the State had to put on evidence that the pill bottle had been chemically altered to prove that Stahmann altered it. "Alter" is interpreted according to its common usage. *Id.* at 584. We have said that word in its common usage can mean "to change; make different; modify." *Williams v. State*, 270 S.W.3d 140, 146 (Tex. Crim. App. 2008) (citing WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 52 (2d ed.1983)). Another court of appeals has relied on dictionaries defining "alter" as, "to make different without changing into something else" and "to make different in some particular, as size, style, course, or the like; modify." *Ransier v. State*, 594 S.W.3d 1, 12

(Tex. App.—Houston [14th Dist.] 2019, pet. granted) (citing Merriam-Webster's Online Dictionary and Dictionary.com).[6] The common thread among the definitions is that "alter" has an expansive meaning in common usage that belies the court of appeals' construction requiring proof of a change in the chemical composition of the marijuana. A rational juror interpreting the word "alter" in its common usage could reasonably conclude beyond a reasonable doubt that the marijuana had become inseparably combined with the human waste, changing the nature and quality of the marijuana.

     ii.    The court of appeals erred when it determined that whether something was "altered" turns on whether the tampering permanently or only temporarily diminished the evidentiary value of the thing.

The court of appeals' conclusion that the alteration evidence was insufficient was in part based on its comment that there was no evidence about whether the marijuana could be dried and ingested, and still render someone intoxicated. *David*, 621 S.W.3d at 927–28. One way to interpret this comment is that the court of appeals was suggesting that such evidence could have proven that the chemical composition of the marijuana had not been changed. If that is the case, as we have already explained, it erred. Another way to interpret this comment, however, is that the court of appeals believed that whether the marijuana was altered turned on whether the marijuana's evidentiary value could be rehabilitated after it was diminished by mixing it with water and human waste. If that is what it meant, it also erred. Based on the plain language of the statute, to commit the

---

[6] This Court granted discretionary review in *Ransier* to address a different issue— the lesser-included offense of attempted tampering with physical evidence and whether the lack of a lesser-included offense instruction entitled Ransier to a new trial. *Ransier v. State*, No. PD-0289-20 (Tex. Crim. App., pet. granted Aug. 19. 2020).

offense of tampering with physical evidence by alteration, a defendant must alter a "record, document, or thing," and he must do so with the requisite knowledge and intent. TEX. PENAL CODE § 37.09(a)(1). There is no language in the statute expressly or implicitly suggesting that altering a thing requires impairing the thing's evidentiary value, only that the person intended to do so.[7] *Id.*

    iii.    Appellant's arguments are unavailing.

Appellant argues that our decision in *Rabb v. State*, 434 S.W.3d 613 (Tex. Crim. App. 2014) should control. In that case, Rabb swallowed a bag of drugs and was convicted of tampering with physical evidence by destruction. *Id.* at 615. He was alleged to have destroyed the bag of drugs. *Id.* We held that the evidence was legally insufficient to prove "destruction" because there was no evidence that Appellant's digestive process destroyed the bag. *Id.* at 617–18. According to Appellant, "[i]f this Court could not find that one can reasonably infer the destruction of a baggie of drugs by passage through a person's digestive tract then how can this Court find that marijuana must be destroyed or altered by its presence in a toilet, even if accompanied by fecal matter." *Rabb* is legally

---

[7] This issue has come up before, albeit in the context of the "destroy" theory of tampering. *See Williams*, 270 S.W.3d at 145 (citing *Spector v. State*, 746 S.W.2d 945 (Tex. App.—Austin 1988, no pet.)) (criticizing the Austin Court of Appeals' interpretation that the destruction of evidence requires that the evidentiary value of the thing to be destroyed and concluding that a glass crack pipe was destroyed when it was shattered because it was "ruined and rendered useless" even though pieces of the broken pipe could still be introduced into evidence); *see also California v. Hill*, 68 Cal. Rptr. 2d 375, 382 (Cal. Ct. App. 1997) (relying on Webster's Third New International Dictionary (1981) to reach the conclusion that "[t]he plain meaning of "destroy" is to ruin something completely and thereby render it beyond restoration or use")); *but see State v. Majors*, 318 S.W.3d 850, 859 (Tenn. 2010) (evidence is not "destroyed" unless the evidentiary value of the thing is ruined).

and factually distinguishable. *Rabb* is about the destruction, not alteration, of physical evidence. Also, while it is true that we said in *Rabb* that "the State did not present any evidence on the condition of the baggie or its contents after Appellant swallowed them . . . ," *id.* at 617, the tampering in this case did not involve ingesting a bag with marijuana in it or the marijuana passing through the human alimentary canal. It involved dumping loose marijuana into a toilet bowl filled with water and human waste. While not everyone would have known the substance was marijuana, anyone could have seen that whatever was in the toilet was mixed with water and human waste.

Appellant also contends that, "[t]he State would have this Court find that it can meet its burden by officers testifying as to what they believe they saw and to their lay opinions about the condition of evidence," and he complains that, had the agents collected the substance, it could have been tested and definitively proven to be marijuana. On the one hand, it seems like Appellant is arguing that Lt. Nava's and Agent Carrasco's testimony that the substance in the toilet bowl was marijuana is insufficient and that expert testimony is required. We disagree. Lt. Nava and Agent Carrasco had many years' experience with drugs at the Department of Public Safety, as both patrol officers and later special agents in the organized crime unit, and they testified that the substance was marijuana based on their training and experience. That is legally sufficient. With respect to the condition of the substance, as previously explained, any person who saw the substance in the toilet (which Lt. Nava and Agent Carrasco knew was marijuana) would have seen that it was mixed with water and human waste.

Finally, while Appellant discusses how the agents could have collected and tested the marijuana, he does not explain how the failure to do so impacts the legal sufficiency analysis.[8] Just because the agents *could* have collected the marijuana, dried it, and tested it, does not mean that the agents *had* to collect the marijuana, nor does it mean that the evidence is somehow "less sufficient" because they did not. Lt. Nava testified that they did not collect the marijuana because it was only a usable amount mixed with water and human waste. His reference to only a usable amount was to the fact that the undercover drug operation was meant to bust a drug-dealing enterprise involving crack cocaine and methamphetamine, not someone with a small amount of marijuana. We cannot blame Lt. Nava and his team for choosing not to collect only a usable amount of loose marijuana mixed with water and human waste.[9]

---

[8] While Appellant does not explain how the ability of the agents to collect and test the marijuana informs the legal sufficiency issue, he does cite several cases involving toilets in which police recovered crack cocaine. *See e.g.*, *Guillory v. State*, Nos. 09-18-00148-CR, 09-18-00149-CR, 09-18- 00150-CR, 2020 WL 216034 (Tex. App.—Beaumont Jan. 15, 2020, no pet.) (mem. op., not designated for publication); *Gordwin v. State*, Nos. 01-14-00343-CR & 1-14-00344-CR, 2015 WL 1967623 (Tex. App.—Houston [1st Dist.] Apr. 30, 2015, pet ref'd) (mem. op., not designated for publication); *Diaz v. State*, Nos. 13-13-00067-CR & 13-13-00068-CR, 2014 WL 1266350 (Tex. App.—Corpus Christi Jan. 23, 2014, no pet.) (mem. op., not designated for publication).

[9] Appellant could have been charged with possessing marijuana had it been collected, but from a charging perspective, tampering with physical evidence is a third-degree felony, and the State was able to elevate Appellant's punishment range to 25 to life using enhancements. TEX. PENAL CODE §§ 12.42(d), 37.09(a)(1). Possession of the amount of marijuana in the toilet was only a Class B misdemeanor and at most could be enhanced using one conviction, subjecting Appellant to between only 30- to 180-days confinement and/or a fine not to exceed $2,000. *Id.* § 12.43(b); TEX. HEALTH & SAFETY CODE § 481.121 (possession of marijuana).

### b. Identity

Having found the evidence legally sufficient to show that the marijuana was altered, we now must determine whether it is also sufficient to prove that Appellant is the person who altered it. In concluding that the evidence was legally insufficient to prove identity, the court of appeals emphasized that (1) there were three occupants in the motel room, (2) that each person had opportunity and access to the toilet, and (3) that there was no evidence about how long the marijuana had been in the toilet. By this, it appears to have been suggesting that the evidence is insufficient because it could be interpreted to support at least four different possibilities,

- the marijuana could have already been in the toilet when the motel room was rented,

- one of the women went into the bathroom that Appellant was already in, put the marijuana in the toilet with the water and human waste, left, then Appellant locked the door,

- one of the women went into the bathroom, put the marijuana in the toilet with water and human waste, left, then Appellant entered and locked the door, or

- Appellant was in the bathroom alone, he put the marijuana in the toilet, and he locked the door.

The court of appeals appears to have invoked the disavowed alternative-reasonable hypotheses doctrine.[10] The issue here is whether the evidence is legally sufficient to show

---

[10] The court of appeals also distinguished *Diaz*, 2014 WL 1266350, at *2, where police found Diaz in a bathroom alone in which "cocaine was found around the rim of the toilet with flecks of cocaine in the toilet water." According to the court of appeals, *Diaz* is distinguishable because in that case there were no other occupants, and Diaz told officers that he was using the bathroom. *David*, 621 S.W.3d at 927.

Appellant put the marijuana in the toilet, not whether the evidence shows that someone else might have done so.

The court of appeals also misapplied the *Jackson* standard of review when it gave undue weight to Lt. Nava's testimony that he did not hear flushing sounds and by requiring direct evidence that Appellant put the marijuana in the toilet. While hearing flushing noises might further support the case against Appellant, the fact that Lt. Nava did not hear flushing noises does not render the evidence insufficient.

Finally, we disagree with the court of appeals' conclusion that the only evidence linking Appellant to the marijuana in the toilet was his proximity to the toilet. There is a significant amount of other evidence. The evidence shows that Appellant did not comply with the agents' commands to exit the restroom and did not answer the agents in any fashion despite that they were announcing themselves as police officers. Instead, the agents began hearing sounds of movement in the room. Then, when they tried to enter, the agents discovered that Appellant had locked the door. Finally, after forcing their way in, agents found Appellant "just standing there" fully clothed in a tiny one-to-two-foot space between the toilet and the unused shower, and Appellant continued to remain silent. While searching the bathroom, agents found loose marijuana in toilet water with human waste in it. Some of the marijuana appeared to still be burning. There were also small pipes at the bottom of the toilet. A rational jury could reasonably infer from this evidence that Appellant was not using the toilet or showering but was instead trying to dispose of drugs and paraphernalia before the motel room was imminently raided. We agree with the State that "the most rational, common-sense inference from this

circumstantial evidence is that [Appellant], who was alone in the locked bathroom with the tampered-with evidence, was the person who placed the marijuana in the toilet."

**CONCLUSION**

Having found the evidence legally sufficient to sustain Appellant's conviction for third-degree felony tampering with physical evidence, we need not address the State's third ground for review,[11] and we reverse the judgment of the court of appeals and remand the cause for the court of appeals to address Appellant's remaining issues.

Delivered: May 11, 2022

Publish

---

[11] Because we conclude that the evidence is legally sufficient to sustain Appellant's conviction for tampering with physical evidence, we need not address whether the court of appeals erred when it rendered an acquittal instead of reforming Appellant's conviction to reflect that he was convicted of the lesser-included offense of attempted tampering with physical evidence.